## EX PARTE EMANUEL et al.

A suspensive appeal will not lie from an order discharging a prisoner under a *habeas corpus*, although the imprisonment grew out of proceedings in a civil action.

[*King*, J. and *Slidell*, J. dissenting.]

RULE on *Buchanan*, Judge of the Fifth District Court of New Orleans, to show cause why a *mandamus* should not be issued, commanding him to allow a suspensive appeal from an order discharging, on a *habeas corpus*, an insolvent debtor, imprisoned under an order made in the course of proceedings instituted against him by his creditors. The judge rejected the application for a suspensive appeal, saying: "I consider it my duty to refuse a suspensive appeal from a judgment discharging a petitioner on a writ of *habeas corpus*. The Code of Practice, art. 824, says that the petitioner shall be *immediately* discharged. I

have no objection to allow a devolutive appeal, although the decisions of the Supreme Court are contradictory ; and the jurisprudence, as settled by the present bench, seems to be adverse to the allowing of any appeal." ·

*Benjamin* and *Micou*, for the appellants, cited *Laverty* v. *Duplessis*, 3 Mart. 42. *Dodge's* case, 6 Ib. 570. *Martin* v. *Ashcroft*, 8 Ib. N. S. 314. *Chardon* v. *Guimblotte*, 1 La. 423. *Hyde* v. *Jenkins*, 6 La. 436. *State* v. *Judge of Commercial Court*, 5 La. 194. *Ex parte Lafonta*, 2 Rob. 496. *Ex parte Mitchell*, 1 Ann. 413. *Succession of Macarty*, 2 Ann. 979. Const. of 1812, art. 4, sec. 3. Const. of 1845, art. 63, 67. Const. U. S., art. 3, sec. 2. *Cohen* v. *Virginia*, 6 Wheaton, 392.

*Schmidt* and *Roselius*, contrâ.

The court being equally divided, the judgment below was, under article 68 of the constitution, affirmed.

EUSTIS, C. J. and ROST, J. For the reasons given by the district judge, we are of opinion that the judgment of the court below should be affirmed.

SLIDELL, J. *Charles Patterson* filed, in the Fifth District Court of New Orleans, his petition as an insolvent debtor. *Emanuel* and others, his creditors, made a charge of fraud, and obtained an order of arrest. The terms of the writ, which followed the order, were that the sheriff should arrest the body of *Patterson*, and him confine till he shall give bond, with good and sufficient security, in the sum of $20,000, conditioned that he will not leave the limits of the jurisdiction of this court, until after the surrender of his property shall have been accepted by his creditors, or duly homologated, and the property surrendered by him duly delivered. *Patterson*, being unable to give bail, remained in custody. Subsequently a meeting of his creditors took place, and their proceedings were homologated. *Patterson* then presented a petition for a writ of *habeas corpus*, praying for his discharge, on two grounds. *First*, That his arrest was illegal, there being no law to authorize the same. *Secondly*, Because the term of his imprisonment had expired, and the conditions upon which it was to continue had been fully accomplished, because the property by him surrendered had been delivered to his creditors, they had accepted the surrender, and their proceedings had been homologated. Notice of this application was given to the creditors ; and, after a hearing, the district judge rendered the following judgment : The court having taken this case under consideration, considering that the period fixed by the order of Judge *McHenry*, acting as judge of this court, on the 24th ult., for the imprisonment of the petitioner, has, by the terms thereof, and by the terms [of art. 233 of the Code of Practice, expired, it is decreed that the petitioner, *Charles Patterson*, be discharged from custody forthwith. The creditors, whose charge of fraud was still untried, then prayed for a suspensive appeal from the order of discharge, which the court refused; whereupon they applied to this court for a *mandamus*, to compel the district judge to grant them such appeal. A rule to show cause having been granted, the district judge answered as follows :

"The defendant comes into court, and, with respect, shows, in answer to the rule *nisi* for a *mandamus* served upon him in this case ; that this respondent considered it to be his duty, under the provisions of article 824 of the Code of Practice, to refuse a suspensive appeal from the judgment rendered in the matter of *Charles Patterson*, praying for the writ of *habeas corpus:* That the writ of *habeas corpus* is issued to a person who detains another in custody, commanding him to bring before the court issuing the writ the body of his prisoner, together with the cause of his detention ; and if, upon examination of the case, on the return of the writ, the court issuing the same be of opinion that the imprison-

54

ment cannot legally continue, the prisoner is to be *immediately* set at liberty. The only issue is, the right of the petitioner to his liberty; and the judgment is carried into effect without delay, either by discharging the prisoner, or by remanding him to prison. Such is respondent's view of our *habeas corpus* act, and such has been the uniform practice, for many years, of the court over which he presides. In the present case, the application of *Patterson* for a *habeas corpus*, was notified to the party who had procured his arrest, according to the requirement of article 821 of the Code of Practice. And that party, the relator in the present case, was present in court upon the trial of the *habeas corpus*, both personally and by counsel. His counsel was heard in opposition to the discharge of *Patterson*, and the judgment was pronounced in his presence. And this respondent hereto annexes as part of this answer, the record of the case of *Charles Patterson* v. *His Creditors*, and that of *Charles Patterson*, praying for the writ of *habeas corpus ;* and submits himself to the judgment of the court in the premises."

Some remarks have been made in argument as to the correctness of the opinion and judgment by which *Patterson* was set at liberty. This is a subject which is not now before us. Our inquiry is, not whether the judgment is erroneous, but whether the creditors had a right to a suspensive appeal from the judgment. The right of appeal is not dependent upon the correctness or error of the judgment. Until the judgment is before us by appeal, we cannot pronounce it right or wrong.

The question is one of the appellate power and jurisdiction of this court; and for its solution our first resort must be to the constitution, under which this court has its being.

The 63d article of the constitution decrees that the Supreme Court, except in cases hereinafter provided, shall have appellate jurisdiction only ; which jurisdiction shall extend to all cases where the matter in dispute shall exceed $300, and to all cases in which the constitutionality or legality of any tax, toll or impost, of any kind or nature soever, shall be in contestation, whatever may be the amount thereof; and likewise to all fines, forfeitures and penalties *imposed by* municipal corporations; and, in criminal cases, on questions of law alone, whenever the punishment of death, or hard labor, may be inflicted, or when a fine exceeding three hundred dollars is actually imposed." Art. 67 declares that the Supreme Court, and each of the judges thereof, shall have power to issue writs of *habeas corpus*, at the instance of all persons in actual custody under process, in all cases in which they may have appellate jurisdiction.

We will first inquire into the appellate jurisdiction of the court in this case, as controlled by the 63d article, and as though that article stood alone ; reserving, for subsequent consideration, the effect of the 67th article upon the grant of jurisdiction antecedently made.

And here the first consideration which presents itself is, the identity of the appellate jurisdiction of this court in civil cases with that of our predecessors under the former constitution adopted in 1812, and under which the State was governed for more than thirty years. The second section of the 4th article of that constitution ordained, that : " The Supreme Court shall have appellate jurisdiction only, which jurisdiction shall extend to all civil cases where the matter in dispute shall exceed the sum of three hundred dollars." It is true that, in the present constitution, the word " civil" is not expressly used; the language of the first clause of the 63d article being, " all cases where the matter in dispute shall exceed

"three hundred dollars;" but its insertion would have been surplusage. That civil cases, and none others, were contemplated in that clause, is obvious from the subsequent provision with regard to the appellate jurisdiction in criminal cases; a jurisdiction of a' restricted character, and, unlike that conferred in civil cases, limited to " questions of law alone."

In copying the constitution of 1812, we are bound, as we said in *McKee* v. *Ellis*, 2 Ann. 167, to presume that the convention was aware of the construction which the same grant of jurisdiction had received from the Supreme Court, and intended that, in the new constitution, it should have the same meaning. Si de interpretatione legis quœratur in primis inspiciendum est quo jure civitas retro in ejusmodi casibus usa fuisset. What was held, therefore, by our predecessors upon the present question has the authority of precedent; and the force of that authority is certainly much increased, if it be found upon the examination of their decisions, that they are uniform and repeated. See *Succession of Macarty*, 2 An. 979.

We will proceed therefore to a brief review of the jurisprudence on this sub-ject, as an indispensable duty in the solution of the present question.

The first case to which our attention has been called is *Laverty* v. *Duplessis*, decided in 1813. That was an application for a *mandamus* to the district court, to allow an appeal from an order on a *habeas corpus*, discharging *Laverty*. He had been arrested by the marshal of the United States, as an alien enemy, under an order to remove such persons to the interior of the country, the United States being then at war with Great Britain. The court refused the *mandamus*. But it is obvious, from the tenor of the opinion, and from the construction which the case subsequently received, that the refusal was based upon the ground, that the court had, under the constitution, no criminal appellate jurisdiction, and that the matter involved was one of a criminal nature. See 3 Mart. Reports, 42. The court commences its opinion by declaring that, the case presents two questions for its consideration: 1st. Whether any, and what, criminal appellate jurisdiction is given; and 2dly, whether, under the constitution or laws, the Supreme Court could exercise a general superintending jurisdiction over inferior courts.

*Dodge's* case came before the Supreme Court in 1819. See 6 Martin, 569. He had caused himself to be brought before the District Court, by a writ of *habeas corpus*. By the return of the jailor it appeared that he was committed on an execution from that court, and admitted to the bounds of the prison, having given bond according to law. The sheriff made oath that the plaintiffs in execution had not advanced the requisite sum, under the statute, for the debtor's sustenance; whereupon he was discharged, and the plaintiffs in execution appealed. It was contended that no appeal lay from a discharge on a writ of *habeas corpus*; that the proceedings were of the most summary kind, and could not be suspended or delayed by an appeal. But the court entertained the appeal, and renewed the decree of discharge.

In *Martin* v. *Ashcroft*, 8 Martin N. S. 313, the plaintiff had been arrested under a *ca. sa.* and was discharged on a *habeas corpus*, by an order of the judge at chambers, under the provision of the Code of Practice. The creditor appealed. The question was distinctly put, whether an appeal would lie to the Supreme Court; and objection was made by the appellee, upon two grounds.: *first*, that it was taken from a decision on a writ of *habeas corpus*; and *secondly*, that the decree of the judge was not rendered in court, but at chambers. Both objections were pronounced insufficient. This court, said Porter, Justice, has decided it had not appellate jurisdiction from the refusal to grant a writ of *habeas*

*corpus,* and, in a subsequent case, recognized the right of appeal from the discharge under such writ. *Laverty's* case—*Dodge's* case. These decisions, he continues, are not in the least contradictory. The first was, when the writ had been resorted to in a matter growing out of the administration of penal law. The second, where it was used to obtain a discharge from imprisonment, on a writ issued in a civil action. The refusal to grant the appeal in the one case, and its accordance in the other, did not proceed from the writ, but from the case in which it was resorted to. If, in a criminal prosecution, the court had not jurisdiction, because this tribunal cannot take cognizance of such matters; but, if the suit was a civil one, it had, because its jurisdiction in cases of this kind does not at all depend on the nature and form of the writs, or remedies, which the parties may exercise, but on the fact that the decision is final, or works an irreparable injury, and the amount in dispute is above $300. The circumstance of the decision being given before the judge at chambers, and not in open court, does not, in our opinion, affect the right of appeal. The case commenced by petition to the judge, the proceedings were had under the provisions of the Code of Practice, which contemplate a summuary trial, and from the decision either party had a right to appeal.

After considering the merits, the judgment of the District Court was reversed, and it was ordered that the *capias,* which was stayed by the decision of the district judge, should be proceeded on according to law, the appellee paying the costs of the appeal.

This opinion seems ever afterwards to have been regarded as a judicial landmark by the former Supreme Court.

It was clearly affirmed in *Chardon* v. *Guimblotte,* 1 La. 421, Judge Martin delivering the opinion of the court. *Guimblotte* had been held to bail, at the suit of his creditor, *Chardon.* A rule was taken to set aside the arrest. It was sustained, and the order of arrest was set aside. The plaintiff took a suspensive appeal from that decree. The defendant thus remaining in custody, and the sheriff refusing to discharge him, he applied for a writ of *habeas corpus,* was brought before the judge, and the sheriff showing no cause for his detention save the order of arrest which had been set aside, the prisoner was discharged. From this order of discharge the plaintiff prayed an appeal, which was refused, the judge being of opinion that an appeal did not lie from an order of discharge on a *habeas corpus.* The Supreme Court thought otherwise, and granted a mandamus. As the constitution had provided for appeals in all civil cases in which the matter in dispute exceeded in value the sum of three hundred dollars, they said it was clear that a party has a right to appeal from any decision in such case which works an irreparable injury; that if an appeal would lie from a decree made in open court, where the judge has the benefit of counsel, *a fortiori* it would lie when an order is granted at chambers, *ex parte.* Such an order might have as fatal a consequence as any other. The defendant, who was in custody upon a claim for $50,000, had been released *ex parte;* and, if there was no remedy, might instantly remove out of the State, and place himself beyond the reach of his creditors. The court again recognized the distinction between civil and criminal cases.

The same doctrine was affirmed in *Hyde* v. *Jenkins,* 6 La. 427; and was again expressly recognized in the *State* v. *Judge of the Commercial Court,* 15 La. 194. Still later, in *Ex parte Lafonta,* the rule was acted upon apparently as a matter of course, the objection not being even raised.

Being therefore of opinion that the grant of appellate jurisdiction in civil cases, under article 63, is substantially the same as was conferred upon our predecessors under the former constitution, and that the convention must be considered as contemplating the same judicial construction as had been adopted and followed during thirty years, the main point is this cause, so far as it depends upon article 63, seems to me to be clearly with the relators. To disappoint the intention of the convention would seem to be, to alter the constitution, and not to expound it.

But it is always an additional reason, if such were required, for holding fast to rules which have been consecrated by solemn and repeated decisions, if we believe them to recommend themselves not merely by the force of precedents, but by their consonance to justice and truth. I feel bound to acknowledge the reasonableness of a rule, which gives a party an appeal from a decree which may irreparably affect his interests; and looking rather to the effect, than to the form of the proceedings, discountenances an evasion of justice.

No one will deny that if *Patterson* had taken an ordinary rule upon the creditors, to show cause why he should not be discharged, the creditors, if dissatisfied with the decree, would have had the right to be heard on appeal. Reason, as well as the athorities cited, seems to forbid the debtor to defeat this right, by changing the mere form of the remedy.

What I have said seems to me conclusive upon the right to appeal in such a case. And, if so, the only question left is, whether the party can have that benefit in the devolutive form, or may take a suspensive appeal.

The reasoning in the cases cited, I think, covers this point. The principle upon which these decisions rest is that, the party has an interest which may be irreparably affected, and that the appellate jurisdiction of the court will be interposed to protect that interest. Why should the protection go half way? and why should a creditor, whose right to a suspensive appeal would be indisputable if the debtor had proceeded by an ordinary rule, be stripped of that right because the debtor has chosen another form of remedy? If the reasons upon which the right of appeal was recognized in the cases cited be sound, we must give creditors the full benefit of them. It would be almost a mockery to say to them, we will inquire whether your debtor was rightfully discharged; but, in the mean while, he shall have the opportunity of placing himself beyond your reach.

It is not my province to question the policy of laws which permit the incarceration of a debtor. Much of the ancient severity has been relaxed in modern times; but the right still exists in a modified form in our statute book, and is mainly aimed at the prevention and punishment of fraud. Those to whom the right is given should be protected in its exercise. It remains only to say whether the question in this cause is in any wise affected by the 67th article of the constitution.

After a careful consideration I am of opinion that it does not, so far at least as concerns the present subject, impair the appellate jurisdiction in civil cases which was conferred by article 63. It is an enlarging clause, extending the judicial power of the Supreme Court to cases not embraced by the jurisdiction of the former court, and was not intended to curtail the jurisdiction which the convention, using substantially the terms of the old constitution, intended to confer upon the present court, in the sense which a long course of judicial decisions had ascertained.

I think that the *mandamus* should issue as prayed for.

Ex parte
Emanuel.

King, J. I concur in the foregoing opinion read by Mr. Justice Slidell, and adopt the reasons he has assigned.                    *Mandamus refused.*