Mussina *vs.* Bartlett.

| 8p | 277 |
| 105 | 342 |

## MUSSINA *VS.* BARTLETT.

1. A defendant, who does not regard the mandate of the subpœna, is understood to have set at defiance the authority of the law, and to place himself in contempt of the process of the court, and is subject to attachment.

2. As a general rule, a defendant who is in contempt, cannot be heard before the court, and is not allowed to contradict the allegations of the bill, or bring forward any defence, or allege any new fact.

3. Nor is he allowed to appear and contest the complainant's demand, before the clerk and master to whom the bill was referred to take an account—but the inhibition can be removed at any time by filing a full and complete answer.

4. Where a defendant, served with a *subpœna* in chancery, neglects to appear, so that the bill is taken *pro confesso* against him, and referred to the clerk and master to take and report an account, it is not necessary that it should appear from the report made under the reference, that the defendant had notice of the time and place of taking the account.

5. A mortgage is regarded in equity, as a security for the debt, and when it becomes forfeited, the mortgagee may take proceedings to make the security available, if so authorised by the terms of the mortgage.

6. Where a party executes a mortgage for the security of several sums of money, to fall due at different times,—upon default in the payment of the debt which first falls due, the mortgage, *pro tanto*, becomes forfeited; and the mortgagee may proceed for a foreclosure and sale of the mortgaged premises :—

7. Though the mortgagor may stop proceedings by paying or tendering what is due upon the mortgage.

8. Where a party executes a mortgage for the security of several sums of money, payable to the same person, and to fall due at different times, if on default, in the payment of the first sum,

Mussina vs. Bartlett.

the mortgagee file his bill to foreclose the mortgage, and pending the suit the other debts fall due, it is competent to take an account of all the debts intended to be secured, and to decree a sale for their payment.

9. Where a bill for the foreclosure of a mortgage, and a sale of the mortgaged premises, has been pending, and the defendant served with *subpœna* for several terms, it is competent to refer the bill to a master, to take and report an account, to receive his report, and render a final decree in the case at the same term.

10. It is not necessary in a decree for the foreclosure of a mortgage and a sale of the mortgaged premises, to prescribe some future day, for the payment of what may be due upon the mortgage, before a foreclosure and sale.

11. The sheriff is competent to execute a decree for the sale of mortgaged premises, upon the foreclosure of the mortgagor's equity of redemption, and the decree need not require a return of the proceedings thereon to the court.

Error to the Circuit court of Mobile, exercising chancery jurisdiction.

Bill of foreclosure, tried before *Harris*, J.

In this case, the defendant failed to appear and answer, and the bill was referred to the clerk and master to take an account. The defendant appeared before the master to contest the claim of complainant, and exceptions were filed to the report, which were overruled. The defendant was foreclosed of his equity of redemption, and the mortgaged premises ordered to be sold, unless the amount claimed was paid by defendant.

To reverse this decree, a writ of error was taken, and the following errors assigned:

1. There was no service of subpœna upon the plaintiff in error: nor any appearance by him in the cause,

until after judgment *pro confesso* was taken against him, and order of reference made to the master.

2. The chancellor overruled plaintiff's exceptions to the report of the master.

3. The report of the master was made to the court unreasonably soon after the order of reference, thus depriving plaintiff of his legal right of contesting the same: there being no rule prescribed by the chancellor for the course of his procceeding.

4. The final decree ordered the mortgaged premises to be sold, without giving any reasonable day of payment to the plaintiff in error, or directing any report of his proceedings thereon by the master to be made to the court.

*Thornton*, for plaintiff in error.
*Campbell*, contra.

*Thornton*, for plaintiff in error. There was no service of process or appearance, before the order *pro confesso*, and therefore the exceptions of defendant to the report of the master, ought to have been sustained—(Aik. Dig. 287; 3 Bibb, 1.) The report was premature, because made without express directions prescribing the mode of proceeding—(Aik. Dig. 289.) The final decree should have given day to the plaintiff in error, by decree *nisi*— and the report of the master should have been made to a future term of the court—(2 J. J. Marsh. 117; 1 Mon. 66; 1 Bibb, 526, 528; Hard. R. 520; see Pirtle's Digest, 2 vol. 93.)

*Campbell*, in support of the decree below, contended,

that the master is not required to give a notice to any party, unless required to do so in the order of the court making the reference, or by a rule of the court—(Hoffman's Ch. Pr. 520.) The chancellor never makes such an order when the party is in contempt, as a matter of course—(4 Hen. & Munf. 483; Jac. Ch. R. 30; 4 E. Con. Ch. R. 344; Hoffman's Ch. P. 520.) When mortgaged premises are ordered to be sold, no time for redemption is allowed in the decree—(4 John. Ch. R. 140; 5 Ohio R. 544; 9 Price, 30.) The report and decree were not made too soon—(Aik. Dig. 288.) Equity will notice instalments falling due upon a mortgage, after the commencement of the suit—(Adams et al. vs. Essex et al. 1 Bibb, 149; 3 Pow. Mort. 903; 1 Paige, 450; 5 Paige, 40.)

COLLIER, C. J.—In the arguments at the bar, the following points have been raised upon the assignments of error:

1. Where a defendant, served with *subpœna* in chancery, neglects to appear, so that the bill is taken *pro confesso* against him, and referred to the clerk and master to take and report an account, is it necessary that it should appear from the report made under the reference, that the defendant had notice of the time and place of taking the account?

2. Where a party executes a mortgage for the security of several sums of money, payable to the same person, and to fall due at different times, if on default in the payment of the first sum, the mortgagee file his bill to foreclose the mortgage, and pending the suit the other

debts fall due, is it competent to take an account of all the debts intended to be secured, and to decree a sale for their payment.

3. Where a bill for the foreclosure of a mortgage, and a sale of the mortgaged premises, has been pending, and the defendant served with *subpœna* for several terms, is it competent to refer the bill, &c. to a master, to take and report an account, to receive his report, and render a final decree in the case at the same term?

4. Is it necessary, in a decree for the foreclosure of a mortgage, and a sale of the mortgaged premises, to prescribe some future day for the payment of what may be due upon the mortgage, before a foreclosure and sale.

5. Is the sheriff competent to execute the sale of mortgaged premises, upon the foreclosure of the mortgagor's equity of redemption, and should not the decree require a return of the proceedings thereon to court.

1. By the second section of the act of eighteen hundred and twenty-three, "to regulate proceedings in chancery suits," (Aik. Dig. s. 14, p. 287,) it is provided, that if the defendant does not file his answer within the time prescribed by law, after the service of *subpœna*, "the bill shall be taken *pro confesso*, and the complainant, if he deem it necessary, may take an attachment to compel an answer." A defendant, who does not regard the mandate of the *subpœna*, must be understood to have set at defiance the authority of the law, and to place himself in contempt of the process of the court. It is on this legal assumption, that he subjects himself to an attachment. And, according to the practice prevailing in the English Chancery, a party who does not regard its pro-

cess, or is disobedient to its orders, is considered as in contempt, and, as a *general rule*, cannot be heard before the court; (Vowles vs. Young, 9 Vesey, jr. 172,) certainly not to contradict statements, or state any new facts on his own part. In ——— vs. Lord Gort, (1 Hogan, 77,) a motion was made for a receiver, on process to a sergeant-at-arms. The solicitor of the defendant, who was in contempt, opposed the application. *The Master of the Rolls* observed: "The general rule is, that when a party is in contempt, he will not be allowed to oppose the relief sought by the plaintiff, by contradicting the allegations in his bill, or bringing forward any defence, or alleging new facts; neither will he be heard by affidavit, except it be made with a view of purging his contempt. But he may be heard to direct the attention of the court to any error or insufficiency in the plaintiff's own case, as made by the bill."

In Heyn vs. Heyn, (Jacob's R. 49; 4 Cond. Eng. Ch. R. 25,) the defendant was served with subpœna, but declined answering, and stood out all process of contempt. The case was then set down for hearing, and an order obtained for taking the bill *pro confesso*, and a decree for an account before the master. The defendant, at the next term thereafter, moved that he might be at liberty to put in his answer forthwith, which he undertook to do, and to pay the costs occasioned by his contempt, and that all further proceedings as to the bill being taken *pro confesso*, be stayed, the defendant submitting to such decree as the court should think fit. The *Lord Chancellor*, in delivering his opinion, said: "I apprehend that when the bill is taken *pro confesso*, the defendant is not

at liberty to go before the master without an order; but the accounts are to be taken *ex parte*, and they may charge him with whatever they can. My apprehension is, that after suffering the cause to go on till a decree is made *pro confesso*, he cannot be relieved, and permitted to come in as a party to the account for his own benefit, except on paying all the costs, and on a special application—and I think there is a necessity for such an order." —(Maynard vs. Pomfret, 3 Atk. 468; Clark vs. Dew, 4 Cond. Eng. Ch. R. 344.) Thus, we think it very satis-factorily appears, that a defendant who is in contempt, will not be allowed to contradict the allegations of the plaintiff's bill, bring forward any defence, or allege any new facts; and that one against whom a bill is taken *pro confesso*, for a failure to appear and answer on ser-vice of process, is in contempt, we think, quite as clear; and he cannot consequently insist upon a right to appear before the clerk and master, to whom the bill has been referred to take an account—(4 Hen. & Munf. R. 483.) A defendant here, will have no just cause to complain that he has not been allowed to contest the plaintiff's demand before the master, since the inhibition results from his own neglect or perverseness, and may be re-moved at any time "by filing a full and complete an-swer" to the plaintiff's bill—(Aik. Dig. s. 18, p. 288.) While, according to the English practice, a defendant can only be relieved from the consequences of such a con-tempt, by application to the court, and submitting to such terms as it may impose -(4 Cond. Eng. Ch. R. 25 and 344.)

2. A mortgage is regarded in equity as a security for

the debt. When it becomes forfeited, so as to authorise the mortgagee to take proceedings to make the security available, must depend upon the terms of the mortgage. In the case before us, the plaintiff in error stipulated with the defendant, to pay him several sums of money at different times, and conveys to him a lot in the city of Mobile, conditioned that the conveyance shall be void, if these sums shall be paid at the periods agreed on. Now, we consider it clear, that upon default in the payment of the debt which first fell due, the mortgage, at least *pro tanto*, became forfeit, and the mortgagee might proceed for a foreclosure and sale of the mortgaged premises. The mortgagor, it is true, might have stopped the proceeding, by paying or tendering so much as was then due upon the mortgage—(Saunders et al. vs. Frost, 5 Pick. Rep.) But having failed to do this, and suffered the case to progress till the other instalments became due, how can he with propriety say to the mortgagee, that you shall only have your decree for so much as was due when you exhibited your bill? It frequently so happens, that the property mortgaged consists of one entire parcel, which could not be divided, or would be greatly lessened in value by division. Suppose, in such a case, a decree should be had for a sale, before the entire sum intended to be secured fell due, could the mortgagor insist upon being paid the excess produced by the sale? We apprehend not. If he could, the right to coerce a sale upon the first default, instead of being beneficial, would often be injurious to the mortgagee, if he were to avail himself of it; for having sold the mortgaged premises and paid over the excess, his security would be gone, and he

thrown upon the personal responsibility of the mortga-
gor. In such a case, there could be no doubt but the
powers of equity would be competent to make such dis-
position of the money, as to charge it with the satisfac-
tion of the other instalments, provided for by the mort-
gage. The mortgage, we have said, becomes forfeit by
the first default, and suit may be immediately brought.
If, pending the case, other sums become due, what prin-
ciple of equity inhibits their recovery in the same suit.
The bill, if properly drawn, would disclose the entire
case, accompanied with copies of the *mortgage, bonds,
notes, &c.*, so as to enable the court to render perfect jus-
tice between the parties. But the question does not rest
alone upon its intrinsic justice. In Smith vs. Shuler, (12
Serg. & R. Rep. 240,) it was determined, that an eject-
ment might be maintained on a mortgage payable by
instalments, before all the instalments became due, so as
to let the mortgagee into possession—(See also Easta-
brook vs. Moulton, 9 Mass. 258.) We cite these cases
merely to show that the mortgagee's right to subject the
security to the payment of his debt, is complete upon the
first default. But Adams et al. vs. Essex et al. (1 Bibb's
R. 149,) is directly in point. In that case, it appeared
that a mortgage had been executed to secure the pay-
ment of a sum of money by instalments. Upon a fail-
ure to pay the first instalment, the mortgagee brought
his bill to foreclose: pending the bill the last instalment
became due, and the Circuit court rendered a decree for
all the sums secured by the mortgage. In the Court of
Appeals, two questions seem to have been raised: 1st.
Was not the suit prematurely commenced? 2d. Was the

mortgagee entitled to a decree for more than was due on his mortgage at the time his bill was filed?

In regard to the first question, the court say, that the case before it, being a suit in equity, ought rather to be "governed by the liberal principles which govern in covenant, assumpsit and special agreements, than those technical and rigid rules which are applicable to the action of debt only. We are, therefore, of opinion, that the suit was properly commenced, although but one of the instalments was due at the filing of the bill."

In respect to the second question, it is remarked, "that the chancellor having once jurisdiction of the cause, ought not to turn the parties round at the hearing, to begin *de novo;* but should go on to finish the controversy. In the case before the court, the last instalment became due before the cause was heard, so that the chancellor might well, as he has done, embrace the whole case in the decree." This conclusion seems to us so just in itself, that we are disposed to adopt as correct, the principle upon which it proceeds.

3. The bill, in this case, was pending for more than a year after the service of a subpœna on the plaintiff in error, and the decree was not rendered until the third term of the court after it was filed. Under these circumstances, the plaintiff cannot complain that the cause has been hurried to a close with unreasonable despatch. By the fifth section of the act of eighteen hundred and twenty-three, already cited, it is enacted, that "it shall not be required to file a replication to an answer; and in all cases where the answer is filed ten days before the sitting of the court, or the bill is taken *pro confesso* for

Mussina vs. Bartlett.

want of an answer, the cause shall be heard and determined at that term, if practicable, unless on good cause shewn, either party continue the same."—(Aik. Dig. s. 17, p. 288.) This statute clearly authorises a final decree at the same term at which the order taking the bill *pro confesso* is made. In Coates' executrix vs. Muse's administrators et al. (1 Brock. Rep. 534,) a case uninfluenced by any statute or rule of court, Chief Justice Marshall said that the practice in the Circuit court for the Virginia district was to let the report of a master in equity, which was esteemed in any degree complex, lie to a second term for consideration and exception. In plain cases, the report is commonly acted on at the first term. Now, whether this point be considered as controlled by our statute or not, the practice of acting on reports at the first term, is to be governed by the court in its discretion, if the act is placed out of view.

4. It is the practice in England, upon the foreclosure of a mortgage, for the decree to direct, upon the non-payment of the principal and interest due, at a given day, that the mortgagor's equity of redemption be forever gone, and that the title vest in the mortgagee—(4 Kent's Com. 173; 3 Powell on Mortgages, 998, 999.) Though this is the general practice, yet, sometimes the mortgagee prays for and obtains a decree for the sale of the mortgaged premises, under the direction of an officer of the court, and the proceeds of the sale will, in such a case, be applied towards the satisfaction of a mortgage, and the excess, if any, paid over to the mortgagor.

The practice of naming some future day in the decree, when the money ascertained to be due should be paid,

Mussina *vs.* Bartlett.

and previous to which day, the mortgagor's equity should not be foreclosed, proceeded, doubtless, from a consideration of the great injury frequently done to mortgagors, by wresting from them estates largely more valuable than the debts secured, without paying them the difference. To avoid such injustice, the English chancery not only gave day by the decree of foreclosure, but would actually enlarge the time of payment upon the application of the mortgagor, even more than once, especially if the mortgagee's security is considered ample—(3 Powell on Mortgages, 998, 999 ; 4 Kent's Com. 173.) Though such is the origin of this practice, yet, it is adhered to in the most of the States of the Union, notwithstanding it is the practice of all of them, (except some three or four,) instead of rendering a decree for a strict foreclosure, to direct a sale of the mortgaged premises, and the payment of the excess to the mortgagor. The practice has, in general, been tacitly acquiesced in, like many of the legal notions we have drawn from abroad, without enquiry whether it is applicable to the state of things here; hence it is, many rules of law are recognised as in force, long after the reason of their adoption has ceased. In England, it has been questioned by high authority, whether chancery, in its desire to prevent injury to the mortgagor, had not gone too far: for Lord Eldon himself regretted, that that court had ever varied the agreements of the parties in such cases—(Anon. MS. 2 Mad. Ch. 492.) And in Ireland and Scotland, it is said the rule does not exist. "for courts in these countries never interfere in the manner in which courts of equity do in England, to protect the borrower against the immediate pay-

ment of money vested in land. On this account, money is in those countries more frequently lent on mortgage than in England—(2 Madd. Ch. 492, n.) In Ireland, the decrees are always for a foreclosure and sale of the mortgaged premises, and though it is usual in practice to prescribe some day, within which payment is to be made, the time is never enlarged—(3 Powell on Mortgages, 962.) This question was considered by Chancellor Kent, in Perine vs. Dunn, (4 Johnson's Chanc. Reports, 143,) who there says that "the rule and the practice apply only to cases of strict foreclosure, where, by the decree, the equity of redemption is barred, and the complete title is vested in the mortgagee. The rule does not apply to cases of decrees for the sale of the mortgaged premises, according to our usual practice. The mortgagor, in such cases, is not subjected to a severe and absolute forfeiture of all his right, but he has the chance of the surplus moneys arising from the sale, and is placed upon the same footing of equality with debtors against whom judgments are rendered, and executions awarded at law." Considering the contract of the parties, there can be no well founded reason for extending the time of payment to any period beyond the decree: to do so, is but giving to the mortgagor an indirect bounty for his want of punctuality.

Besides, it must be remarked, that real estate is subject to levy and sale under a *fieri facias* in this country, the issuance of which is authorised immediately after judgment. Now, if it were required by a decree of foreclosure to give day to the mortgagor, a mortgagee would be in a less favored condition than a judgment creditor,

S P. 37

though he had been so industrious as to secure his lien by contract. Such a distinction cannot be endured—it would be incompatible with justice, and calculated to disturb the harmony of the law; and as the reason of it has ceased, we cannot give it our sanction—(Higgins vs. West, 5 Ohio R. 554.)

5. The decree, in this case, is unusually brief. It merely confirms the report of the clerk and master, (which ascertains the amount due upon the mortgage,) adjudges that the mortgagor's equity of redemption be foreclosed, and that the mortgaged premises be sold according to law, unless the sum ascertained to be due, be paid by him. That it was competent for the court to have directed the sale to be made under the direction of the clerk and master, we have no doubt; yet, as the decree is silent in that regard, we think the execution is provided for by law, through the agency of a sheriff. The act of eighteen hundred and seven, " concerning executions, and for the relief of insolvent debtors," (Aik. Dig. s. 15, p. 162,) authorises the issuance of a *venditioni exponas* to the sheriff, to make the amount of the decree by a sale of the property mortgaged; and the acts in regard to the notice, and time and place of sales under executions on judgments at law, sufficiently indicate the proper course of procedure by the sheriff, in a case like the present.

The sheriff would, of course, make his deed to the purchaser, and return by endorsement on the process how he had executed it. If there was an excess of money produced by the sale, to that, as in ordinary cases, the mortgagor would be entitled; and the powers of the court

over the sheriff, and the manner in which he had performed his duty, would be as ample as if the clerk and master had been substituted as a commissioner.

After considering all the points raised, our opinions are, that the proceedings of the Circuit court, though somewhat untechnical, are not erroneous; and the decree is consequently affirmed.