# BRYAN vs. BRYAN.

[BILL IN EQUITY BY WIFE FOR CONTROL AND CUSTODY OF CHILDREN.]

1. *Burden of proof.*—When a sworn answer is not waived, an answer under oath, denying the allegations of the bill, casts upon the complainant the *onus* of sustaining those allegations by two witnesses, or by one witness with corroborating circumstances.

2. *Intemperate habits of husband as cause for removing custody of children.*—Proof of the fact that the husband was in the habit of drinking freely, and, in a few instances, to intoxication, is not sufficient to authorize the chancellor, on the application of the wife, to take away from him the custody of their children, when it is not shown that his drinking disqualifies him for business, or materially interferes with his business habits, or makes his association dangerous to his wife and children, or pernicious to the latter.

3. *Jurisdiction of chancellor over custody of children.*—Section 2006 of the Code, unlike the act of 1833, (Clay's Digest, 171, § 20,) gives the chancellor jurisdiction of the custody and control of children, as between husband and wife, only in cases of voluntary separation.

4. *What constitutes voluntary separation.*—A separation between husband and wife, to be *voluntary* within the meaning of the statute, (Code, § 2006,) must be by mutual consent : a voluntary abandonment of the husband by the wife, against his wishes and consent, and for causes which in law do not justify such abandonment, does not constitute a voluntary separation between them.

5. *What conduct of husband justifies abandonment by wife.*—Mere grossness of language on the part of the husband, rudeness of manners, and disrespectful bearing towards his wife, do not constitute a legal justification of her abandonment of him.

Bryan v. Bryan.

6. *Original jurisdiction of chancery court over custody of children.*—Independent of statutory provisions, the chancery court has jurisdiction over the custody of minor children, to be exercised for their welfare and benefit; but it requires a strong case to induce the court thus to interfere with the common-law rights of the father.

7. *When custody of children will not be taken from father.*—The chancery court will not, by virtue of its original jurisdiction over the custody of minor children, take away from the husband the custody and control of his children, (one a girl nearly five years old, and the other a boy nearly three years old,) and confide them to the wife, when it is shown that she has voluntarily abandoned her husband, against his wishes and consent, and without any legal justification for so doing; and it does not appear that the husband's character or habits would necessarily contaminate the children, or render them unsafe in his custody.

8. *Costs.*—A decree in chancery cannot be reversed, on error or appeal, solely on account of an error in the imposition of costs.

APPEAL from the Chancery Court at Claiborne.

Heard before the Hon. WADE KEYES.

THE petition in this case was filed by Mrs. Francis L. Bryan, the wife of Leonidas L. Bryan, and sought to remove their children from the custody and control of her husband. The opinion of the court contains a sufficient statement of the facts. On final hearing, on petition, answer and proof, the chancellor dismissed the petition, at the costs of the complainant's next friend; and his decree is here assigned as error.

THOS. WILLIAMS, for the appellant.

D. W. BAINE, *contra*.

A. J. WALKER, C. J.—A married woman, separated from her husband, seeks to exclude the latter from the custody of the two children of the marriage; one a girl, now four years and nine or ten months old, and the other a boy, now about two years and ten months old. The allegations of the petition are, that the husband is intemperate, is wasting his own and his wife's estate, has beaten his wife and the older child, threatened farther abuse of his wife, admitted adulterous intercourse with one or more women, used profane language in the presence of his wife and children, and, in fits of intoxication, broken his furniture; and that such conduct had compelled the

petitioner, with her children, to leave her husband, and to seek an asylum in her father's house, whence the defendant has made an ineffectual attempt to take them.

The defendant denies all the charges impugning his conduct as husband and father; and his answer, which is sworn to, casts upon the complainant the *onus* of sustaining those allegations by two witnesses, or by one with corroborating circumstances; for there is no waiver of an answer on oath.

The accusation that the defendant had beaten his wife, is unsustained; for the only witness who proves that he ever struck her, so testifies as to clearly indicate that he did nothing more than to slap his wife in a laughing and playful mood, or (as the witness expresses it) "in fun," and not in a rude or angry manner.

[2.] Nearly fifty witnesses are examined upon the subject of the defendant's intemperance. A careful examination of this immense mass of evidence convinces us that the defendant was in the habit of drinking freely, and in a few instances to inebriation; but that his drinking had not been carried sufficiently far to disqualify him for business, or materially to interfere with his business habits, or to make his association dangerous to his wife and children, or so pernicious to the latter as to authorize the taking away the custody of them.

The witnesses whose testimony seems designed to prove the commission of adultery by the defendant are Sheffield, Singletary, Bowen and Merriman. The first of those witnesses is shown by competent testimony to be unworthy of belief, and his evidence is itself improbable, and, if true, places him in a very degraded position. The witness Singletary is contradicted by three witnesses in material particulars. Bowen proves merely a jocular reply of defendant to a question of his wife, as to what he intended to do with his money in Mobile, which is entitled to no consideration as evidence of defendant's guilt. What we have said leaves the imputation of adultery to rest upon a loose remark made to Merriman, the witness. This witness is contradicted by Hobbs as to one of his statements, and the testimony of Sarah Bryan also

contributes to show the incorrectness of a part of his evidence. It is too clear for argument, that the testimony of this witness cannot overcome the denial of a sworn answer.

While the defendant must stand vindicated from the grosser charges made against him, yet it must be said to his discredit, that his language to his wife and about her has not been characterized by refinement or delicacy, but was often rude, harsh, and indecorous.

[3.] Section 2006 of the Code gives the chancery court jurisdiction over the custody and control of children, as between the father and mother, in cases of *voluntary* separation. This section differs from the old law, (Clay's Digest, 171, § 20,) in confining its operation to cases of voluntary separation.—Cornelius v. Cornelius, 31 Ala. 479.

[4.] The equity of this proceeding is not maintainable under that statute. The separation here is neither actually, nor in point of law, voluntary. The separation was against the husband's wishes, and in despite of his request. There may be a voluntary abandonment by the complainant of her husband, but there is not a voluntary separation. The statute contemplates a separation with the assent of both parties. It may be that the law would regard a separation as voluntary, implying the husband's consent, when his conduct was such as to justify his wife in leaving him. The facts here do not afford such justification to the wife. There is no correct view of the married relation, which will authorize a wife to leave her husband, and place both him and herself in the "undefined and dangerous situations of a husband without a wife, and a wife without a husband," merely on account of such rudeness of language, indelicacy of expression, grossness of manners, and disrespectful bearing, as may appear from the evidence in this case to have characterized the conduct of the defendant.—People v. Mercein, 8 Paige, 46 ; Evans v. Evans, 2 Haggard, 35. However hard it may be to endure such conduct, and however we may sympathize with and desire to relieve one subjected to it, the hardships of individual cases must be borne, and sympathy for

them must bend in deference to the great social interests, and wise public policy, and biblical precepts, in which are founded general rules consulting for the permanency and stability of the marriage institution. One who enters into this relation must, by a uniform exhibition of affection, by mild remonstrance, by gentle and moderate resistance, by judicious reasoning and soft persuasion, by a forbearance of resentment, by an accommodation to peculiarities, and, above all, by a constant display of an example of conjugal propriety, strive to cure such faults as the evidence imputes to the defendant. If such causes were recognized as a sufficient justification for a separation, the first unguarded sally of passion on the part of one of the married pair would often be met by unyielding harshness, and attended by an unforgiving temper, and thus become the ultimate cause of estrangement and abandonment. The abandonment of the conjugal home is without justification in law, and there is no conceivable ground upon which the separation can be deemed voluntary. It is the legal duty of the complainant, upon the facts before us, to return or offer to return to her husband, and carry with her the children of the marriage.

It is a question mooted in this case, whether the law will, under any circumstances, interfere in favor of the wife in reference to the custody of the children, when she has abandoned him without a legal justification. We cite some authorities in reference to that question, and leave it undecided.—DeManneville v. DeManneville, 10 Ves. 52; Forsyth on Infants, 21; People v. Mercein, 8 Paige, 46. But it is to our minds clear, that the court ought to hesitate long before it would interfere in behalf of a wife who has separated herself from her husband without his consent, and without adequate causes. The common love for the common offspring, and the common desire for their society, constitutes a strong tie between married people, and contributes to the steadfastness of the relation. This cohesive influence would be lost, if the unauthorized character of a separation is not regarded in disposing of the custody of the children.

[6–7.] As the equity of this proceeding can not be main-

tained under our statute, the question arises, can it be
maintained under the principles which governed the juris-
diction of the chancery court over minor children at com-
mon law.   The chancery court has jurisdiction, indepen-
dent of the statute, over the custody of infant children.
Story's Eq. Ju. § 1341.  But in the exercise of that juris-
diction, respect is always paid to the prior common-law
right of the father to the custody and control of his minor
children.—*Ex parte* Boaz, 31 Ala. 425.   This prior right
of the father will be controlled and made subordinate to
the interests of the children, but it requires a strong case
to induce the court to interfere with that right.—People
v. Humphries, 24 Barb. 521; People v. Mercein, 3 Hill,
399; 8 Paige, 46; 25 Wendell, 64; Wellesley v. Duke of
Beaufort, 2 Russ.; Wellesley v. Wellesley, 2 Bligh, 124;
Anonymous, 1 Sim. N. S. 54; Commonwealth v. Briggs,
16 Pick. 203; 1 Blacks. Com. 453; Forsyth on Infants,
chap. 11, p. 19, (68 L. L. 14).   Undoubtedly, stronger
proof against the husband ought to be exacted, where, as
in this case, the wife is living apart from the husband
without his consent, and without the sanction of the law,
and the wife herself does not appear to be well fitted for
the task of training and controlling infants of tender age.
The proof goes far towards showing an occasional indul-
gence on her part in paroxysms of causeless rage, in
which she forgets the tenderness and kindness which a
mother owes to her young children.   Notwithstanding
all these considerations, we would have been extremely
reluctant at the commencement of this suit to have with-
held our sanction to the protection of the mother in the
custody of the children, because at that time one of them
was an infant of ten months at the breast, and the other a
girl only three years of age.   But now the period of lac-
tation with the younger child has passed, and two years
have been added to the ages of the children; and it is not
now impossible for the father to discharge the duties of
nurture and care, in which he will be aided by his mother.
Taking into consideration the fact that the defendant is
not shown to be of such character, or to have such habits
as would necessarily contaminate the children, or render

34

them unsafe in his custody, and the strong favor with which the law regards the father's prior right to the custody of his children, and the unauthorized state of separation from her husband in which the petitioner has placed herself, and her want of any peculiar fitness for the custody and care of the children, and also that the children have passed the age when the mother's care, though valuable and desirable, is indispensable, we deem it our duty to withhold any active interference in behalf of the wife's exclusive custody and control of the children.

We are not sure, that a part, if not all the costs in this case, ought not to have been imposed upon the husband; but if there be an error as to the costs, that is the only error in the case, and the established rule does not permit us to reverse a decree for an error of the chancellor as to the costs alone.—Randolph v. Rosser, 7 Port. 49.

In deciding this case, we have looked to the testimony in the record of the other case between the same parties, without deciding that there was such an agreement as would authorize us to do so, because in the absence of the evidence the result would have been the same, and we desired to settle the controversy on its merits.

The decree of the chancellor must be affirmed.