(33 South. 121.)

No. 14,588.

STATE ex rel. HAHN v. KING, Judge, et al.*

(Nov. 17, 1902.)

APPEAL—DIVORCE—REMARRIAGE—ESTOPPEL.

1. By making an appeal rest upon an order of appeal to be granted by the court which rendered it, authority is vested in that court to determine primarily whether the order should be granted, leaving the legality of its action to be tested through an application for mandamus.

2. Where a father is ordered, under a writ of habeas corpus, to place a minor child, of whom he had the possession, in the custody of its mother, under the terms of a judgment of divorce which the latter had obtained in another state against her husband, the father of the child, the husband is estopped from contesting that judgment, when on the trial of the writ he testified himself that under authority of that judgment he had contracted a second marriage. Under such circumstances the district judge will not be forced by mandamus to grant the husband and father a suspensive appeal from his own judgment, carrying the divorce into execution.

(Syllabus by the Court.)

Mandamus by the state, on relation of Carl Hahn, against Fred D. King, as judge of the civil district court, to compel respondent to grant relator a suspensive appeal in habeas corpus by relator's divorced wife to obtain possession of an infant child of the parties. Writ denied.

Robert J. Maloney, for relator. Respondent judge, pro se. Howe, Spencer & Cocke, for respondents Rath.

Statement of the Case.

NICHOLLS, C. J. In September of 1902, Mary R. Rath applied to the civil district court for the parish of Orleans for a writ of habeas corpus, to be directed to Carl Hahn, the relator herein, ordering him to produce the body of a child named Harry F. Hahn, whom she alleged he held illegally in his custody. Her prayer was for a writ of habeas corpus to deliver "the said Harry Hahn from the custody of relator, and that she be granted the custody of said Harry F. Hahn, and such other relief as may be just."

The allegations in support of the prayer were: That she had married relator in Oc-

tober, 1896. That Harry Hahn, a child, at the date of her petition, four years of age, was issue of that marriage. That relator about July, 1900, left her, and took with him said child by force, without her knowledge or consent, and against her wish. That since July, 1900, relator had remained away from her with the child, and had concealed their whereabouts from her. That on the 29th of May, 1902, the court of common pleas of Hamilton county, Ohio, granted a decree divorcing her from relator, and awarding to her the custody, care, education, and control of said child. That she had since married Frank G. Rath, with whom she was then living at Weston Place, Hamilton county, Ohio. That he was doing business in Cincinnati, and she herself was in business. That they were abundantly able to take care of, support, educate, and furnish a home to said child, and her husband, Rath, who joined with her in the application, was willing to co-operate with her in so doing. ·

That relator, by reason of his occupation (a traveling musician), was incapable of attending properly to the care and education of the child. That by reason of his habits, morals, disposition, and mode of living, he was unfit to have charge of the child, and that close association of the child with him would endanger its morality, prospects, and welfare. That she was desirous to have custody of the child, and to give it a home with her.

Relator excepted that the relatrix in the application for habeas corpus, being a married woman, and not specially authorized by her husband to appear therein, was incompetent to file the application. He excepted that the petition disclosed no just or legal cause of action. Under reservation of exceptions, he answered.

After pleading the general issue, he admitted his marriage to the applicant, Mary R. Duffy, but he declared he had no knowledge of the present legal status of his wife. He denied that he took her child, Harry Hahn, by force, without the knowledge or consent of his wife, and against her wish, and averred that the child was taken from his wife by her express consent, by reason of her inability to properly support and rear him. He denied that he concealed his whereabouts from any one, and averred that he

had for the last two years lived openly with the boy, and been constantly employed during one season at the French Opera House, and during another at the Athletic Park and Orpheum Theater, pursuing his avocation as a musician in full view of the thousands of people who frequented the said places of amusement.

He denied knowledge of any decree of the court of common pleas of Hamilton county, wherein the applicant had obtained a divorce, and granting to her the custody, care, control, and education of the child, until some time after the decree was rendered, but not before the institution or during the pendency thereof.

He averred the decree to be absolutely null and void for a number of reasons assigned. Among these reasons, he averred that the court which rendered the decree was without jurisdiction. He averred that the plaintiff in a suit for divorce was required by the laws of Ohio to have been a bona fide resident of that state for 12 consecutive months preceding the suit, and he averred that in truth and fact his wife did not reside in the said state continuously during the 12 months preceding the filing of the suit.

He averred that, by the laws of Ohio, when the time for bringing parties into court is not fixed by statute the summons should be made returnable on the second Monday after its date, and the day of the month on which it is returnable shall be stated therein.

He averred that the service in the decree referred to was received by the sheriff in February, 1902, and returned February 17, 1902, with the indorsement "Not found," showing the willful disregard of the necessary provisions of the statute, in that it failed to indicate by the return the day of the month on which it was made returnable, viz., February 24, 1902, but nevertheless returned seven days in advance of the order of court, and the failure to recite therein that any effort was made to locate or find the defendant in said suit was fatal thereto.

He averred: That no constructive service was made upon him according to the laws of Ohio, in that the residence of the defendant was not stated, although known to the plaintiff at the time the suit was filed; nor did the party making the service deliver to the clerk copies of the publication, with the proper postage, immediately after the first publication; nor did the clerk mail to the defendant a copy mailed or directed to his residence named therein, or make an entry thereof in the appearance docket; nor did the person who made the service, his agent or attorney, before the hearing, make or file affidavit that the residence of the defendant was unknown, and could not, with reasonable diligence, have been ascertained; nor an affidavit made to the effect that the service of the summons could not be made within the state before service by publication could be made, and that the case was one of those mentioned in section 5048, Rev. St. Ohio; all of the requirements being essential to a constructive service according to the laws of said state.

That the laws of the state of Ohio (Rev. St. § 5050) provide that "publication must be made for six consecutive weeks in a newspaper printed in the county where the petition is filed, or if there is no newspaper printed in the county, then in a newspaper printed in the state and of general circulation in such county. If it be made in a daily newspaper, one insertion a week shall be sufficient, and it must contain a summary statement of the object and prayer of the petition, mention the court wherein it is filed and notify the person or persons thus to be served when they are required to answer."

That the said publication was not made as therein required, and contained no summary statement of the object and prayer of the petition, was not signed by any officer, was not a copy of the original citation, did not notify the defendant when he was required to answer, and expressly eliminated from the said publication all reference to that prayer of the petition claiming the custody of the child, showing a conclusive abandonment of the child. That consequently, even if all the other legal formalities had been strictly complied with, the said decree of court could not bind him, except as to those matters that were contained in the publication. That no petition or other papers were ever served upon him, relative to the said proceedings, nor did he have any notice whatever of the said proceedings. That he had the custody of his child, and had always had the same, and at the time of the institution of the said proceedings in Ohio said child was with him in New Orleans, and

not subject to the jurisdiction of the court of Ohio, and no order or decrees affecting the said child could be legally made unless the said child was within the confines of the jurisdiction and limit of the said court.

That according to the law of Ohio a decree of divorce in favor of the plaintiff did not carry with it the right to the custody of the child, as there is no implied right in said decree, having the force and effect of the substitution or enlargement thereof, and the effect to be given to said decree is limited in any event to the term of the service and the matters contained in said publication.

That he had always lived a life of honor and decency, and was engaged in a reputable and profitable business, more than sufficient for the sustenance, support, and education of the child and himself. That he is devotedly attached to the child, upon whom he showers all the affection possible for a father to bestow upon his child.

That by reason of his conduct the said child has become greatly attached to him, and, in the interest and welfare of the child, it was meet and proper that he should not be taken from him.

That his wife was not capable, morally or otherwise, of properly rearing and educating the said boy, by reason of her past conduct, the facts concerning which he would verify, should the court consider the question at issue in the case, and in which event he would pray for a reasonable time to introduce the commissions for the testimony of certain named witnesses residing in Cincinnati and New York, the originals of which were in the hands of counsel for relatrix, for the purpose of attaching cross-interrogatories, should they see fit, at the time of the presentation of his return. He averred that the writ had illegally and improvidently issued, and that the same should be discharged, and prayed to that effect, and for judgment in his favor, and against the relatrix, decreeing to him the care and custody of the child; the said child to remain with him.

He prayed for all necessary orders and for general relief.

The district court, after hearing evidence, rendered judgment, for written reasons assigned, in favor of the relatrix in the application for a writ of habeas corpus, and against the respondent, making peremptory the alternative writ which had issued, and ordering the civil sheriff to turn over and deliver the minor child, Harry Hahn, to the relatrix, Mrs. Mary R. Rath, his mother. The respondent' prayed for a suspensive appeal.

The court refused to grant a suspensive appeal, but granted a devolutive appeal. Respondent then filed the present application, praying that a mandamus issue to the district judge, ordering him to grant the suspensive appeal prayed for, and that the judge be ordered to send up a certified copy of 'all the proceedings had before him in the said cause, and restraining and prohibiting the civil sheriff of the parish of Orleans from delivering the child to the custody of Mary R. Rath.

Upon reading this application the district judge was ordered to send up a certified copy of the record of the case, and to show cause why the writs prayed for should not be issued. Proceedings were ordered stayed until the application should be acted upon.

The district judge sent up a certified copy of the record, accompanying it with a written answer, assigning the reasons and grounds upon which he had based his action.

In this return, the judge stated that, under the rule laid down in the case of Watts v. Police Jury, 11 La. Ann. 141, the petition in the case, being verified by oath, made proof of all the allegations, except so far as they were specially denied and put at issue; that the applicant had adduced testimony, which he annexed and forwarded, which fully established her case. He recited the facts which he considered established by the testimony in the case.

In reference to the decree of divorce granted to the wife in Hamilton county, Ohio, which gave her the custody and care of the child, issue of her marriage with Carl Hahn, he stated that, as that judgment was duly authenticated under the acts of congress and under the constitution of the United States he was bound to give it effect, unless the court which rendered it was without jurisdiction; that he was satisfied from the evidence adduced that the court of Hamilton county had jurisdiction, and, this being the case, it could not be collaterally attacked (Maxwell v. Stewart, 22 Wall. 77, 22 L. Ed. 564), but would have to be set aside by a direct action brought for that purpose in Cincinnati, if it contained irregularities. He further stated

that, since the judgment of divorce granted by the Ohio court, relator had, as shown by the testimony, acquiesced in its validity, by contracting a second marriage in Louisiana, and that his second wife was with him in the courtroom on the trial of the writ of habeas corpus; that therefore he was estopped from saying the judgment was not valid. In re Richardson's Estate, 132 Pa. 292, 19 Atl. 82. He said that, before taking action on the application for an appeal, he had heard argument upon the question, and had reached the conclusion that, under the circumstances, it would be contrary to both the letter and the spirit of the law to grant a suspensive appeal; that he was willing to grant, and had granted, a devolutive appeal. He assigned his reasons for reaching that conclusion. His action was based principally upon articles 813, 819, 824, and 850 of the Code of Practice, and the decision of this court in Ex parte Emanuel, 4 La. Ann. 424.

He stated that, while article 85 of the constitution of 1898 gave appellate jurisdiction to the supreme court in all matters concerning the custody of children, it did not declare that all appeals on that subject should be suspensive,—particularly a judgment rendered in a habeas corpus proceeding.

He referred the court to In re Clark, 9 Wend. 212; People v. Farman (Mich.) 2 Am. Law Rev. 353, 25 Cent. Dig. p. 1079.

He maintained that to allow a suspensive appeal in the case at bar would be practically to annul the writ of habeas corpus; to suspend it, so to speak, without any war or invasion. Giving full effect to the Ohio judgment, he said that relator, if granted a suspensive appeal, would remain in possession of this child for an indefinite time, although its custody had been decreed to its mother, though he had been divorced for the faults found by that decree, and although he had been enjoined from interfering with the wife's custody, and notwithstanding he had since married again; that it might be months before the supreme court could hear the case on the merits; it might be that the federal question of the effect of the Ohio judgment might be taken to the supreme court of the United States.

He answered that article 575 of the Code of Practice laid down the general rule that an appeal may be made suspensive only upon the condition that security shall be given for a sum exceeding by one-half the amount for which the judgment was given; that by article 580 of the Code of Practice, and articles 1160 and 2634 of the Civil Code, there are many kinds of judgments in respect to which no suspensive appeal is allowed; that it cannot be presumed that judgments of this character could be held in check by a suspensive appeal granted upon a simple bond for costs; that, if this were permitted. the father, by leaving the bond to be forfeited, could depart from the jurisdiction of the court, taking the child with him, and defying the efforts of the mother to secure her rights. This seems to be a reductio ad absurdum, and went to show that neither the legislature nor the constitutional convention intended that a suspensive appeal should be granted in such a case as this.

Counsel for the wife has adopted for his brief the reasons assigned by the judge in opposition to the application for mandamus.

### Opinion.

Counsel for relator has filed no brief whatever on behalf of his client. We gather from the judge's answer that his position was that, the right to an appeal of some kind in this class of cases being conceded, no law could be found limiting the appeal to one devolutive in character; that the classes of cases in which judgments were to be provisionally executed, although the necessary security was given, were specially enumerated in article 580 of the Code of Practice, and these classes could be extended only by enlarging the same by express statute, and there was no statute placing judgments rendered in matters of habeas corpus under the provisions of that article.

The first thing in the record which arrests our attention is the statement made by the judge, and supported by testimony taken during the trial, that the relator since the rendition of the Ohio judgment had contracted in Louisiana a second marriage. It is claimed that this fact estopped the relator from contesting the judgment, either by appeal or action of nullity, and that the district court was under legal obligation, under the circumstances, to give full effect to and execute it. The fact that such a second marriage has been contracted is not denied. It was testi-

fied to by the relator himself. Articles 567 and 612 of the Code of Practice have a bearing upon that question. The first declares that the party against whom judgment has been given cannot appeal if he has acquiesced in the same by executing it voluntarily"; and the second, that "the nullity of a judgment rendered against a party without his being cited or by an incompetent judge, even if all the formalities of the law have been observed, may be demanded at any time unless the defendant were present in the parish and yet suffered the judgment to be executed against his property without opposition."

The constitution (article 6) declares that all courts shall be open, and every person, for injury done to him in his rights, lands, goods, person, or reputation, shall have adequate remedy by due process of law, and justice administered without denial, partiality, or unreasonable delay.

Every person who claims to have rights needing enforcement by the courts, or needing at their hands protection by preventive remedies, is entitled to have recourse to them, and it is their duty to receive and consider the demand; but the right to ask that, and to have it granted, are very different matters. If the right set up has never legally existed, or, having once existed, has been lost, the demand is refused.

One of the recognized grounds upon which courts may decline to enter into or proceed further into the investigation of alleged rights or wrongs is under the doctrine of equitable estoppel, which can be invoked and acted upon at the beginning, during, or at the end of the litigation, under varying circumstances. The denial of the right to appeal or to carry on an action of nullity by reason of the acts of a party seeking relief through either rests upon acquiescence and estoppel.

The right to appeal is a constitutional right, but the exercise of the same is made dependent upon conditions attached. By making an appeal from a judgment rest upon an order of appeal granted by the court which rendered it, power and authority is vested in that court to determine primarily whether the order should be granted. If it be of opinion that the situation is such as to withdraw from the party applying for it a right of appeal, the court is justified to refuse the order, leaving the legality of his action to be tested by this court through mandamus, under its supervisory powers, as has been done in this instance.

The court declined to grant the appeal in this case for numerous reasons, which we need not discuss, as we consider one which is assigned to be sufficient to bar the relator from having relief by mandamus. We refer to the fact of relator's having contracted a second marriage under the circumstances shown. He could only have done this under authority of the judgment of divorce granted to his wife. He should come into court with clean hands, and he cannot take a position in this case which would place him before us in the position of a bigamist.

While an appeal may be a matter of right, it is not a matter of course. We refuse to grant the mandamus.

For the reasons assigned herein, the orders heretofore given in this court are revoked and set aside, and relator's application is hereby refused, with costs.

(Dec. 12, 1902.)

PER CURIAM. On motion of W. W. Howe, of counsel for Mr. and Mrs. Rath, relators in lower court, and suggesting that, as appears by the record here, the lower judge, on issuing the writ, directed the sheriff to take custody of the child in controversy, and that the sheriff was in such possession when orders were made in behalf of this court, in September last, of mandamus and prohibition and of certiorari, and that, in order to insure proper execution of the writ of habeas corpus, it is necessary and proper that the said status in the lower court should be restored and continued pending the application for rehearing by said Hahn, it is ordered that the sheriff of the parish of Orleans do resume custody and possession of said child, and hold same until further orders of this court or of the lower court.