(77 South. 447)

BURNS v. SHAPLEY.   (1 Div. 276.)

(Court of Appeals of Alabama.   Dec. 18, 1917. On Application for Rehearing, Jan. 5, 1918.)

1. DIVORCE ⊕⟶305—CUSTODY OF CHILDREN— DISOBEDIENCE OF DECREE.

One by removing children from a state in violation of the decree of a chancery court of that state intrusting them to his care placed himself in contempt of court.

2. DIVORCE ⊕⟶303(1)—CUSTODY OF CHILDREN MODIFICATION OF ORDER—LOSS OF JURISDICTION.

One by removing children from a state in violation of the decree of a chancery court of that state intrusting them to him did not deprive that court of jurisdiction over the parties and the children, so as to prevent it from modifying the decree relative to custody of the children.

⊕⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. DIVORCE ⬦⬦303(1)—CUSTODY OF CHILDREN—FINALITY OF DECREE.**

While a decree as to custody of children is not final so as to prevent modification on change of conditions, it is final as to rights of the parties based on the facts and circumstances existing at the time of and prior to its rendition.

**4. COURTS ⬦⬦511 — CONFLICTING JURISDICTIONS—CUSTODY OF CHILDREN—COMITY.**

The court of another state having at instance of the father assumed jurisdiction to protect children as infant children within the jurisdiction of that state, and they having become wards of that court, and the father in violation of the decree intrusting the children's custody to him, having removed them from that state, the courts of Alabama, recognizing the sovereign authority of the other state in respect thereto, as a matter of comity, will refuse to deal with the question relating to the future welfare of the children.

**5. HABEAS CORPUS ⬦⬦99(1) — CUSTODY OF CHILDREN—RETURN TO OTHER STATE.**

A mother armed with the duly authenticated decree of a court of competent jurisdiction of another state awarding custody of children to her, as the agent and trustee of that court and state, is entitled to their custody, for purpose of returning them to that jurisdiction.

On Application for Rehearing.

**6. CONTEMPT ⬦⬦80—PUNISHMENT—DENIAL OF PRIVILEGES AS LITIGANT.**

A party in contempt will not be heard on anything pertaining to the merits of a cause.

Appeal from Probate Court, Baldwin County; James M. Voltz, Judge.

Habeas corpus by Mrs. Ralph Burns, formerly Shapley, against Walter Shapley. From an adverse judgment, plaintiff appeals. Reversed and rendered.

Mark D. Brainard, of Montgomery, for appellant. W. S. Anderson, of Bay Minette, for appellee.

BROWN, P. J. The appellant, by the writ of habeas corpus, seeks to regain from the appellee the custody of two minor children, one six and the other three years of age. The appellant is the mother and the appellee the father of the children, and were formerly husband and wife, that status having been terminated by a decree of divorce granted at the instance of the appellee by the district court of the Sixteenth judicial district of the state of Montana, sitting in and for the county of Fallon, in said state, in a suit in which the court had jurisdiction of both parties by personal appearance. At the time of the proceedings in the Montana court, the children were in the custody of the mother, who had established her domicile in that state, and the court in a proceeding ancillary to the suit for divorce and as an incident thereto, both of the parties here appearing by counsel, and appellee in person on application of appellee entered a decree taking the children from the custody of the appellant and committing them for the time being to the custody of the appellee. The text of that decree, effecting this result, in so far as is here material, is as follows:

"Upon motion of the defendant and upon due and timely service of notice to and upon the plaintiff, and the plaintiff appearing by her counsel, L. L. Wheeler, Esq., of Ekalaka, Mont., and the defendant appearing by his counsel, P. C. Cornish, Esq., of Baker, Mont., and the hearing hereof having been continued until the present date at which time, the defendant appearing by his said counsel, and the plaintiff in no way appearing: Now, therefore, it is hereby ordered, adjudged and decreed that the custody, care and control of the said minor children of the parties to the said action, namely, Ellis Stowell Shapley and Jack Floyd Shapley be and the same is hereby given to the said Walter Shapley, for and during the minority of the two said children, and until further orders of this court, said children to be kept in the jurisdiction of this court."

After obtaining the custody of the children under this decree, and in violation thereof, the appellee removed the children from the jurisdiction of the state of Montana, bringing them into this state, the appellee being at the time a citizen of this state with his domicile near Foley, in Baldwin county, Ala. Thereafter the court, without personal notice to appellee, on the application of the appellant, and while the children were in the custody of the appellee in Alabama, modified the decree as to the custody of the children, the decree as modified being as follows:

"Upon motion for order to show cause in the matter of the custody of the minor children of plaintiff and defendant herein, J. A. Williams, Esq., appearing as attorney for plaintiff and P. C. Cornish, Esq., appearing as attorney for defendant. The witness M. E. Jones, duly sworn, testified in behalf of plaintiff, and the order of the court awarding the custody of the children to defendant is modified, and the custody of the minor children of plaintiff and defendant is awarded to the plaintiff, the said children to be kept within the jurisdiction of this court."

The appellant rests her right to invoke the jurisdiction of the courts of this state to regain the custody of the children solely on the theory that she is the agent or trustee of the Montana court, and the sovereignty of the state of Montana, whose jurisdiction and power as parens patriæ has been invoked for the protection of the minor children while they were under the supreme guardianship of that state, and within the jurisdiction of its courts, and the decree of the court is entitled to full faith and credit in the courts of this state. On the other hand, the appellee contends that the last order of the court was made without notice to him, and at a time when he, with the children in his custody, was in the jurisdiction of another sovereignty—the state of Alabama—and that the decree as modified is void, and therefore he is entitled to retain the custody of the children, in the absence of a showing that he is not a proper person to have their custody. We find cases wherein courts of one state have refused to recognize the adjudications of the courts of another state

dealing with the custody of children, under the full faith and credit ,clause of the federal Constitution, on the ground either that such adjudication was supported by constructive notice only, and therefore had no extraterritorial operation and could not affect the right of a party domiciled in another state, over whom the court had no jurisdiction, or at the time of such adjudication the children themselves had an established domicile in a state other than the one in which the decree was rendered, and therefore were not subject to the sovereignty of the state seeking to exercise its power over them.

The case of In re Bort, 25 Kan. 308, 37 Am. Rep. 255, cited by appellee, was in the latter class. The principles influencing those decisions are not present in this case. Here, as the evidence shows, the mother of the children had separated from her husband and returned to the state of Montana, where her people lived, to reside with her parents, taking with her the elder of the children, the other not then being born, and established her domicile in that state for the time requisite to entitle her to sue for a divorce. During that time, the other child was born in the state of Montana. The appellant there commenced a divorce suit, and in that proceeding the appellee appeared, thus placing the parties and the subject-matter within the jurisdiction of that court, and the children under the sovereign guardianship of that state. These facts clearly differentiate this case from the line of authorities above referred to. It is well settled in almost every jurisdiction that in dealing with the custody of minor children, the question of paramount importance to be considered by the court is the welfare of the children, and if necessary for their good, the court has the power to take them from the custody of the parent and intrust their custody to some other suitable custodian. Kirkbride v. Harvey, 139 Ala. 231, 35 South. 848; Neville v. Reid, 134 Ala. 320, 32 South. 659, 92 Am. St. Rep. 35; Murphree v. Hanson (Sup.) 72 South. 437;[1] Anonymous, 55 Ala. 428; Bryan v. Bryan, 34 Ala. 516. The theory upon which the court proceeds in such cases is that the custody and control of the parent over his minor children is a trust committed to him by the state, and this trust is dominated by the supreme guardianship of the state as parens patriæ of all infants within its border, and when the parent abuses the trust so as to endanger the welfare of the child, in such sort as to hamper or retard its development into a good citizen, the interest of society requires the state to assert its supreme guardianship and protect its ward. See Black's Law Dictionary, "Parens Patriæ," p. 868; Hochheimer, Custody of Infants, § 12, pp. 48–50; Cooley's Blackstone, vol. 2, p. 426; Bryan v. Bryan, supra; Morrill v. Morrill, 83 Conn. 479, 77 Atl. 1.

[1] 197 Ala. 246.

It has been said:

"Minors are the wards of the nation, and even the control by the parent is subject to the unlimited supervisory control of the state" (1 Tiedeman, State and Federal Control, 335; Starnes v. Albion Mfg. Co., 147 N. C. 556, 61 S. E. 525, 17 L. R. A. [N. S.] 602, 15 Ann. Cas. 470), and that "the supreme right of the state to the guardianship of children controls the natural rights of the parent when the welfare of society or of the children themselves conflicts with parental rights" (Starnes v. Albion Mfg. Co., supra; Alderman v. Alderman, 159 N. C. 507, 73 S. E. 126, 39 L. R. A. [N. S.] 988).

And in the recent case of Murphree v. Hanson, 197 Ala. 256, 72 South. 441, the Supreme Court of this state used this language:

"Civilization has long since discountenanced that doctrine of ancient Roman law wherein children were treated as chattels, and the courts of this day have no more important or sacred duty to perform than to look after the proper care and custody of" minor children "within their jurisdiction."

[1] The district court of Montana is a court of chancery (Montana Constitution, art. 8, § 11), and when that court assumed jurisdiction to determine the question as to who should have the custody of the children involved in this suit, they became the wards of the court, and the respondent by removing them from the state of Montana, in violation of the decree of that court, placed himself in contempt of court. McGough v. McGough, 136 Ala. 170, 33 South. 860; Pearce v. Pearce, 136 Ala. 188, 33 South. 883; 22 Cyc. 519, 520.

[2] The learned trial judge held that the removal of the children out of the state of Montana by appellee deprived the court of that state of jurisdiction over them, and that the decree as modified was void, for want of jurisdiction in the court to render it.

The decree as first entered was unquestionably interlocutory, the court retaining in the decree jurisdiction to modify it. The decree as modified is final and determinative of the rights of the parties as predicated on the facts then existing, if the removal of the children out of the state did not deprive the court of jurisdiction. McGough v. McGough, supra; Slack v. Perrine, 9 App. D. C. 128; Com. ex rel. Thompson v. Ebert, 24 Pa. Co. Ct. 648; People ex rel. Ludden v. Winston, 34 Misc. Rep. 21, 69 N. Y. Supp. 452; 15 R. C. L. 940, § 417; Ex parte Mylius, 19 N. M. 278, 47 Pac. 918, L. R. A. 1915B, 154, Ann. Cas. 1916B, 941; Wilson v. Elliott, 96 Tex. 472, 73 S. W. 946, 75 S. W. 368, 97 Am. St. Rep. 928.

The following text taken from the second edition of Bishop on Marriage and Divorce is approved by the New Mexico court:

"Under our national Constitution, this order is plainly a record to which, if the court has jurisdiction, the same faith and effect permitted it in the state of its rendition must be given in every other state. And the true rule in the state of its rendition is that it is res adjudicata concluding the question. But it does not conclude the question for all time, since new facts may create new issues. Nor, since the relation of parent and child is a status, right-

fully, like marriage, regulated by any state in which the parties are domiciled." Ex parte Mylius, supra, and authorities cited; Slack v. Perrine, supra.

Did the removal of the children from the state of Montana by the appellee, in violation of the confidence and trust imposed in him by the court, deprive the court of jurisdiction over the parties and the children, and is the decree as modified void? If so, the right inhering in a sovereign state as parens patriæ is a mere illogical theory that cannot be classed as a power becoming a sovereign state. This question is so forcibly answered by the Appellate Court of the District of Columbia that we adopt the following utterances from that court:

"The plea that the children, at the time of the decree rendered, were not in New Jersey, but in the District of Columbia, and therefore the court had lost its jurisdiction, is utterly untenable. That a litigant, by violating the confidence of the court, and in direct contempt of its authority, can wholly defeat its jurisdiction by absconding with the thing or person that is the subject of contention is an inconceivable proposition. It is true the power of the court to give immediate execution of its decree may be thus rendered nugatory, but the power to decide the questions at issue and to determine the title of the respective parties remains and cannot be taken away. That the court may have rendered an erroneous decision is of no importance whatever. If the appellees by their conduct rendered it impossible for their counsel to appear and represent them at the hearing and thereby failed to have the merits of their cause fully and effectively presented, the fault is their own and they must bear the consequences of their deliberate action. Possibly, had they remained in court, the decision might have been different; or they might have reversed this decree on appeal to the highest court. But, erroneous or not, the decree must be considered equally conclusive of all matters that were or might have been offered on behalf of the defendants therein. Nesbit v. Riverside Independent District, 144 U. S. 610, 618, 12 Sup. Ct. 746, 36 L. Ed. 562; Dowell v. Applegate, 152 U. S. 327, 343, 14 Sup. Ct. 611, 38 L. Ed. 463; Scotland Co. v. Hill, 112 U. S. 183, 5 Sup. Ct. 93, 28 L. Ed. 692; Id., 132 U. S. 107, 113, 10 Sup. Ct. 26, 33 L. Ed. 261; Laing v. Rigney, 160 U. S. 531, 542, 16 Sup. Ct. 366, 40 L. Ed. 525. If the contention as regards the loss of jurisdiction by reason of the removal of the children from New Jersey was sustained by this court, what assurance have we that our judgment in this case may not be rendered equally vain with that of the Chancery Court of New Jersey? The children might be spirited away into Maryland or Virginia and the same contention made in the courts of those states as to the effect of the judgment in this jurisdiction. We apprehend that those courts would give effect to the decree herein so far as the rights of the contestants are concerned. We will, at least, furnish them no precedent for different action." Slack v. Perrine, supra.

See, also, Morrill v. Morrill, 83 Conn. 479, 77 Atl. 1; Stetson v. Stetson, 80 Me. 483, 15 Atl. 60; Baily v. Schrader, 34 Ind. 260; State ex rel. Hahn v. King, J., 109 La. 161, 33 South. 121.

But it is insisted that the decree relating to the custody of children is never final, but is in its nature interlocutory, and is not binding on the court that renders it, and therefore is not entitled to full faith and credit under section 1 of article 4 of the Constitution of the United States.

[3] While such decrees of a court of chancery are not final in the sense that they will preclude the court as the agent of the sovereignty of which it is a part from interfering to protect the wards of the court from conditions arising subsequent to the rendition of the decree, it is final as to the rights of the parties based on the facts and circumstances existing at the time of and prior to its rendition. In McGough v. McGough, it was said:

"The decree in such cases, in awarding the custody of the children, while final in determining the present rights of the parties, should not be permanent, but temporary in its nature and effect. It should be left open to future control and modification by the court, as subsequent conditions and circumstances might require for the good of the children, who are considered, in a sense, the wards of the chancery court."

The Supreme Court, speaking by the same learned justice in another case, said:

"The paramount consideration is the well-being and good of the infant. The rights of the petitioner and the defendant in the petition are secondary in consideration. The infant is regarded as the ward of a court of chancery, and that court will not permit its well-being to be jeopardized by previous contest between the father and mother concerning its custody and care. The court may by its decrees change its custody from one parent to the other, as the interest and care of the infant may in the judgment of the court require. The character and purpose of the proceedings here are different from an action where only the rights of the parties litigating are involved." Pearce v. Pearce, 136 Ala. 188, 33 South. 883.

The effect of these holdings, as we construe them, is that while a decree of this nature, because of the peculiar trust resting on the court of chancery to protect the welfare of all infants within the sovereignty of which it is a part will not cut off the power of the court to protect the wards of the court from conditions arising subsequent to the decree, that such decree is final as to the right of the parties to the proceeding, as predicated on facts and circumstances existing prior to its rendition. It would be preposterous to hold that parties to such litigation, after they had invoked the power of the court to determine such issues to-day and after the court had patiently heard them and rendered its decision, could to-morrow commence the same kind of a proceeding in the same court or in any other court of the same state and inquire into facts and conditions existing at the time of and prior to the former decree, and that such decree is not res adjudicata, as to the issues as based on the circumstances existing at the time the decree was rendered. Such holding would lay a foundation for interminable and vexatious litigation with respect to a most delicate subject.

The doctrine of res adjudicata is necessarily limited in every case to the issues as settled on the facts existing at the time of the adjudication, and it in no case embraces

subsequent occurrences from which different rights accrue. A judgment determining that A. is the owner of certain property to-day as against B. will not preclude B. from showing that subsequent to the judgment he acquired the title to the property.

[4] The court of Montana having at the instance of the appellee assumed jurisdiction to protect the children here in question as infant citizens within the jurisdiction of that state, and the children having become wards of that court, and it appearing that the appellee, without asking permission of the court, removed the children from the state of Montana, in violation of the decree intrusting their custody to him, the courts of this state, recognizing the sovereign authority of the state of Montana in respect thereto, as a matter of comity, will refuse to deal with the question relating to the future welfare of the children. Castleman v. Jeffries, 60 Ala. 380; Gilkey v. Pollock, 82 Ala. 509, 3 South. 99; 4 R. C. L. 908, § 3; Bank of Augusta v. Earle, 13 Pet. 520, 10 L. Ed. 274; Fuller v. Steiglitz, 27 Ohio St. 356, 22 Am. Rep. 312.

[5] The appellant, armed with the duly authenticated decree of a court of competent jurisdiction of a sister state awarding the custody of the children to her, as the agent and trustee of that court and the sovereign state of Montana, is entitled to the custody of the children, for the purpose of returning them to that jurisdiction.

In holding to the contrary, the learned trial judge erred, and his order will be reversed and judgment appropriate to protect the appellant's rights will here be rendered.

Reversed and rendered.

### On Application for Rehearing.

This cause coming on to be further heard and it appearing to the satisfaction of the court that the appellee, Walter Shapley, has, in violation of the orders of this court, removed the children in question, to wit, Ellis Stowell Shapley and Jack Floyd Shapley, out of Baldwin county and possibly out of the jurisdiction of this court, and is therefore in contempt of this court's authority: It is therefore ordered and adjudged that the application filed by the said Walter Shapley for rehearing will not be considered, but the same is hereby stricken from the files of this court. It is further ordered that the clerk of this court issue a writ of arrest, directed to any sheriff of the state of Alabama, commanding the arrest of the said Walter Shapley, and directing that he be brought before this court to show cause why he should not be punished for violating the order of this court issued on the 18th day of December, 1917. It is further ordered that all the costs of this court and the court below be and the same are hereby taxed against the said appellee.

PER CURIAM. [6] It is made to appear to the satisfaction of the court, by the return of the sheriff on the writ heretofore issued, and by other satisfactory evidence, that the appellee, Walter Shapley, has violated the order of this court by removing the children out of Baldwin county since the rendition of the judgment on the 18th day of December, 1917, and that he is secreting said children from the process of this court, and is therefore in contempt of the orders and authority of the court to enforce its judgment. It is well settled in this state that a party in contempt will not be heard on anything pertaining to the merits of the cause. Mussina v. Bartlett, 8 Port. 277; Jacoby v. Goetter, 74 Ala. 427; Crabtree v. Baker, 75 Ala. 91, 51 Am. Rep. 424; Ex parte Pearce, 111 Ala. 99, 20 South. 343.

An order will therefore be entered striking appellee's application for rehearing from the files, and directing the issuance of an appropriate writ for the apprehension of the said appellee, that he may be brought before this court to show cause why he should not be punished.

Application for rehearing stricken.