[Boylan v. Kohn, et al.]

# Boylan *v.* Kohn, *et al.*

## *Appointment of Guardian for Insane Person.*

(Decided April 20, 1911.  55 South. 127.)

1. *Insane Persons; Guardianship; Statutes; Construction.*—Construing together sections 4359 and 4360, Code 1907, it is held that the paramount interest to be conserved in the appointment of a guardian is the best interest of the ward and his estate; hence, it is the duty of the court to appoint that guardian who is nearest of kin, if suitable, provided he can best manage the estate, and applies; if another applicant, though of remoter kinship could, in the judgment of the court, best manage the estate, he should be appointed in preference to any other; if none of the relatives applying are suitable, the court should reject them all, and appoint the general guardian of the county, or the sheriff.

2. *Same; Orders Appealable.*—An order appointing a guardian for an insane person is reviewable under section 2837, Code 1907, and presents for review the question whether the trial court abused its discretion in appointing the guardian.

3. *Same; Abuse of Discretion.*—Where the physical custody of a non compos had been committed to a hospital for insane, and the estate of the non compos consisted almost entirely of land worth about $120,000.00, but which was encumbered, the judgments, mortgages and other charges aggregating about $40,000.00, it was not an abuse of the discretion of the court to appoint as guardian, on account of superior fitness, a nephew of the non compos instead of a sister fifty-three years of age.

APPEAL from Montgomery Probate Court.

Heard before Hon. J. B. GASTON.

Proceedings in the probate court for the appointment of a guardian for Terry J. Toole, a non compos. From a decree appointing Frank D. Kohn as such guardian, Annie U. Boylan appeals. Affirmed.

HUGH NELSON, and TYSON, WILSON & MARTIN, for appellant. Under the provision of section 4359 and 4360, the court should have appointed the nearest of kin who was the sister.—*Williams v. McConnico,* 27 Ala. 574. Counsel call attention to the various sections of the Code beginning with the Code of 1867, up to the

present date, and insist that under the proper rules of construction, the court was in error in its action. As to the proper construction to be placed theeon, they cite the following cases.—*Lehman-Durr & Co. v. Robertson,* 59 Ala. 235; *Cocciola v. Wood-Dickerson Co.,* 136 Ala. 535; *U. S. v. Freeman,* 8 How. 565; *U. S. v. Rabbit,* 1 Black. 61; *Atkins v. Disintegrating Co.,* 18 Wall. 381; *Lanford v. Dunklin,* 71 Ala. 609; *Bradley v. The State,* 69 Ala. 322; *Lindsey v. U. S. S. & L. Co.,* 127 Ala. 366; 16 A. & E. Enc. of Law, 575. An appeal lies from this decree.—Sec. 2837, Code 1907. If not under that section, then certainly under section 2855-6.

RAY RUSHTON, and W. M. WILLIAMS, for appellee. The appointment of a guardian for an incompetent is entirely within the discretion of the court in the absence of a compelling statute. The Alabama statute does not limit the court's discretion except that when there are two or more applicants the court must prefer that applicant who is nearest of kin provided such will best manage the estate in the judgment of the court.— Adam's Equity, 291; 16 A. & E. Enc. of Law, 575; *Mews v. Mews,* 76 Miss. 372; Sec. 4359, Code 1907; *Ex parte Livingston,* 1 John Ch. 436; *Ex parte Richards,* 2 Bev. 377; *In re Taylor,* 9 Paige 611. Under the facts in this case, the court exercised the sound discretion in appointing Kohn as best fitted to handle the affairs of the incompetent. No appeal lies from an order or decree made in the exercise of discretion by the Court.—*Hill v. Gayle,* 1 Ala. 275, 276; *Strong v. Catlin,* 37 Ala. 706, 708; *Phleming v. State,* Minor 43; *Gaines v. Tombeckbee,* Minor 51; *Adams v. Horsefeld,* 14 Ala. 223; *Ex parte Putnam,* 20 Ala. 592; *Reaves v. State,* 158 Ala. 57. A mandamus is a proper remedy to compel the Court to act, but never lies to direct the Court how to

[Boylan v. Kohn, et al.]

act or to review a discretionary decree or order.—*Taylor v. Kolb,* 100 Ala. 603, 606; *Ramagnano v. Crook,* 85 Ala. 226, 229; *Ex parte Hurn,* 92 Ala. 102, 104; 13 Am. & Eng. Enc. Pl. & Pr., p. 526 (Alabama cases collected in note).

SOMERVILLE, J.—Terry J. Toole having been duly adjudged insane and committed to the insane hospital, three of his relatives separately filed petitions in the probate court asking for letters of guardianship. Two of these applicants are nephews and one of them is the sister of the non compos, whose estate, consisting almost entirely of land, is represented and shown to be worth about $120,000, incumbered, however, with judgments, mortgages, and other charges aggregating about $40,000. The court properly heard the several applications all together, and upon the testimony adduced he decided that one of the nephews, Frank D. Kohn, was entitled to letters of guardianship, and ordered and decreed accordingly, at the same time denying the petitions of the other nephew and of the sister, Mrs. Annie U. Boylan. From this decree, Mrs. Boylan prosecutes this appeal, asking that the letters issued to appellee be revoked, and that a decree be here rendered for her in accordance with the prayer of her petition.

Section 4359, Code 1907, is: "If there are two or more applicants for the guardianship of a person of unsound mind, the court must prefer that person who is of nearest relationship, and will, in the judgment of the court, best manage the estate of the ward." This has been the form of the statute since the Code of 1886. In the Codes of 1867 (section 2452) and 1876 (section 2756) the statute read: "In cases where there are two or more applications for letters of guardianship, by persons equally related, he must appoint that person

who, in his opinion, will best manage the estate of the ward." Prior to the Code of 1867, the selection of guardians was controlled only by such common-law principles as were generally recognized in the American State. The general rule is thus stated: "While there is no rule of law excluding the heirs or next of kin, on the other hand there is no rule of absolute preference of relatives; the court selecting the committee with a view to the best interests of the lunatic, keeping in view always the possibility of his recovery."—16 Am. & Eng. Ency. Law, 575. And again: "In choosing a guardian there is no rule of law which prefers relatives over strangers, or the reverse; but the court will do whatever is best for the lunatic. If it appears that the heirs at law or next of kin of the party are most likely to protect his property from loss, one of these will be appointed; but it is discretionary with the court to appoint a stranger."—22 Cyc. 1139, 1140. This language is, we think, fully sustained by the reported cases. In its general aspects, at least, the guardianship of insane persons does not differ from that of infants, and the selection of a guardian in either case, subject to a preference hereafter noted, is governed by the same principles substantially.

A determination of the merits of the conflicting claims of the two applicants for letters of guardianship depends in a large measure upon the construction which must be given to section 4359 of the Code. The appellant (the sister) insists that the statute leaves in the court *no* discretion as between relatives of different degree, but is mandatory in favor of the nearest relative, if that relative be *fit and competent*, regardless of the superior qualifications of any other applicant whose relationship is more remote; in other words, that the only discretion the court can exercise is in choosing

between relatives of the same degree. And she asserts
that the evidence submitted to the court conclusively
shows that she is both fit and competent. The appellee
(the nephew), on the other hand, contends that at com-
mon law the selection and appointment was within the
unrevisable discretion of the court, and that this dis-
cretion has not been impaired by the statute; and on
this theory he moves to dismiss the appeal. He further
claims that, however this may be, his selection by the
court was proper and justifiable as a judicial finding on
the testimony and facts in evidence. The decree recites
that the court, "after hearing all testimony offered by
the parties in support of their respective motions, is of
the opinion that Frank D. Kohn, by reason of superior
fitness for the duties of the office, is the proper person
to serve as guardian of the estate of the said Terry J.
Toole, and that of the three applicants for appointment
as guardian he will, in the judgment of the court, best
manage the estate of the ward."

We are clearly of the opinion that both of these the-
ories of the statute are erroneous. Its language could
only have been intended to *fix* in favor of the nearest
relative a preference already recognized by the courts
in practice, but which was the outgrowth of an orig-
inal discretion, by which is meant a liberal judicial dis-
cretion, subject to revision on appeal only in cases of
manifest abuse. But, while the statute thus creates
what may be termed a right in favor of the nearest rel-
ative, it is a strictly qualified and subordinate right.
The paramount consideration of the law has always
been the best interests of the ward and of his estate,
and this is peculiarly the case in respect to the selec-
tion of his guardian. And when the law declares a
preference in favor of any class of persons, it is only
because of the assumption, sanctioned by the laws of

human nature and experience, that the person thus pre-
ferred will best administer the trust in favor of the
ward, and not because the law recognizes any rights in-
hering in relationship per se. This principle is not
only recognized in the statute, but is enjoined in man-
datory terms. And we can entertain no doubt, in view
of the declared principles of the common law, and the
plain language of the statute itself, that the advantage
of the estate remains the paramount purpose of the
law, and overshadows in importance any claims of rela-
tives to undertake its management, whether their
claims be prompted by the prospect of selfish profit, or
by sentiments of unselfish service.

In the case of infants, since the laws of nature as well
as of society commit their custody and nurture to their
parents, it is deemed important for obvious reasons
that parents should be preferred as guardians also for
their children's estates. And hence our statute pro-
vides that the "father, if a *suitable and proper person,*
and willing to give bond and qualify as guardian, is en-
titled to a preference."—Code, § 4339. It will be ob-
served that in this single instance the *best* management
of the estate is subordinated to other interests, and the
only test applied is *general fitness* for the care of the
infant's estate. But, in dealing with guardianships
other than a father's, what is the language employed?
The statute is: "If there be two or more applicants for
the guardianship of a minor, the judge of probate must
prefer that person who is of nearest relationship, and
will, in the opinion of the judge, *best* manage the estate
of the. ward."—Code, 4342. This statute, though
slightly variant in phraseology, is identical in meaning
and effect with its congener, section 4359. The change
in the language indicative of the test which the court
is to apply in giving effect to the preference in favor of

a father, and of the nearest relative merely, is highly significant, and we think decisive of the construction to be given to the latter provision. And, if such is its meaning in respect to infants, it can surely mean nothing else when applied to insane persons.

We therefore hold that, under section 4359 of the Code, it is the duty of the probate court to appoint as guardian that applicant, if suitable and proper, who is nearest of kin, *provided* he can best manage the estate; but, if in the judgment of the court another applicant, though of remoter relationship, can best manage the estate, he should be appointed in preference to any other, and, if none of the relatives applying are suitable and proper persons, then the court may and should reject them all, and appoint the general guardian of the county, or the sheriff, as prescribed by section 4360.

We further hold that from such a decree an appeal lies to this court under section 2837 of the Code, and that this court will review the action of the probate court in the selection and appointment of such guardian; but, its action in this regard resting in a sound judicial discretion, it will not be disturbed by this court unless the record shows a manifest abuse of that discretion.

It appears from the evidence in the record that the estate here concerned is one of considerable magnitude and value, and that its future prospects are complicated by the existence of burdens in the way of mortgages and other lien charges upon it to the extent of about one-third of its value. It includes about 400 acres of farm lands, and, in view of the exigencies of its proper care and management, as well as of the fiscal problems that harass and perhaps threaten the integrity and safety of the estate, the probate judge was no doubt decisively influenced in his choice, not only by

[Boylan v. Kohn, et al.]

considerations of the sex and comparative experience and business ability of the applicants, but also of their comparative age and physical strength. In the ordinary course of nature, a woman of 63 might not be long able to personally cope with the duties and difficulties here forecast, and a change of guardians might soon become necessary, with inevitable expense and disadvantage to the estate. And this contingency, it has been said, is entitled to great weight in making the selection.—*Bennett v. Byrne,* 2 Barb. Ch. (N. Y.) 216. The personal custody of this ward has been committed to the insane hospital, and hence the superior fitness of the sister, if it could be conceded in a case of adult insanity, for ministering to his personal comfort and well-being, can find no field for expression here.

Without determining whether, in the exercise of his judgment in such a matter as this, the probate judge is confined exclusively to the information which petitioners may choose to present to him through their witnesses, and, without undertaking to pass upon the absolute weight of the evidence before us, we are convinced that there has been no abuse of its discretion by the probate court, and that its action ought not to be disturbed.

Affirmed.

SIMPSON, McCLELLAN, and MAYFIELD, JJ., concur.