# Murphree *v.* Hanson, *et al.*

### Habeas Corpus.

(Decided May 11, 1916.   Rehearing denied June 30, 1916.
72 South. 433.)

1. **Infants; Equity Jurisdiction.**—Any matter affecting a child may become a subject of equity jurisdiction, and it is immaterial whether it be brought to the attention of the court by bill, petition, or application for writ of habeas corpus, since the relief desired indicates the form of the application.

2. **Same; Custody; Interest of Child.**—The paramount consideration, in proceedings involving the custody and care of infants, is the well being and good of the child.

3. **Guardian and Ward; Removal of Guardian; Jurisdiction.**—A court of equity is the general guardian and protector of all infants within its jurisdiction, and may remove a guardian, although he is appointed by the probate court.

4. **Infants; Jurisdiction; Equity.**—Whenever a suit is instituted for the protection of an infant, either in person or estate, the infant becomes the ward of the court, and the court exercises over him and his estate a general supervision and control.

5. **Same; Right of Guardian; Res Judicata.**—No proceedings concerning the custody of an infant can become a matter of res judicata so as to affect a court of equity in the exercise of its paramount jurisdiction over the infant brought within its control.

6. **Habeas Corpus; Parties.**—In habeas corpus for the custody of an infant where the respondents named were the persons intrusted with the custody of the infant by a bank which had become and been appointed the guardian of the infant, the non joinder of the bank as a party respondent was not a defect of which respondents could complain, since they were asserting the rights of the bank as its agent, and the proceedings were to change the custody, and not the guardianship of the infant.

[Murphree v. Hanson, et al.]

7. **Guardian and Ward; Appointment; Notice; Ex Parte.**—Letters of guardianship may be issued without notice directed to the next of kin; it being purely an ex parte proceeding.

8. **Same; Appointment; Eligibility; Corporation.**—Under § 3518, Code 1907, the corporations therein named may act as guardians of the estate, but not of the person of minors; guardianship of the person being a personal relation and calling for personal supervision which cannot well be given by the corporation.

9. **Same; Letters; Conclusiveness.**—To the extent that they purport to give a bank control and authority over the person of a minor, the letters of guardianship are void.

10. **Adoption; Declaration; Effect.**—Under § 5202, Code 1907, a declaration of adoption, being purely an ex parte proceeding requiring no notice or order of court, is in no way binding upon a court of equity, once acquiring jurisdiction of the person of a child, as to its proper custody.

11. **Same; Nature.**—Under said section the declaration of adoption is in no sense a judicial act, and has about it no elements of a judicial decree.

12. **Guardian and Ward; Custody; Preference of Relatives.**—All other things being equal, the relatives of a minor will be preferred to strangers in awarding his custody, since § 4342, Code 1907, indicates that as the proper policy.

13. **Same.**—Where both parties who seek the custody of a year old infant, are of good character, have about the same financial standing, and the minor has an estate of about $12,000 of its own, things are so equal that a relative should be preferred to strangers as its guardian.

14. **Habeas Corpus; Pleading; Technicality.**—Mere legal niceties in pleading are not favored in habeas corpus proceedings to recover the custody of a child.

15. **Appeal and Error; Review; Trial by Court.**—Where it appeared that the trial court sitting without a jury, with the witnesses before him, took an erroneous view of the law as applied to the facts, the rule that the judgment of the court in such a trial must have the effect of a verdict of the jury, is without effect.

(Anderson, C. J., and McClellan, J., dissent. Somerville, J., dissents in part.)

APPEAL from Birmingham City Court.

Heard before Hon. JOHN C. PUGH.

Petition by Mrs. Willean Murphy against N. J. Hanson and others for the custody of an infant. Judgment for respondents and petitioner appeals. Reversed and rendered.

Transferred from Court of Appeals.

G. M. EDMONDS and C. B. POWELL, for appellant. CABANISS & BOWIE, and ALBERT BROWDY, for appellee.

GARDNER, J.—This was a proceeding before the judge of the city court of Birmingham brought by appellant, Mrs. Willean

Murphree, against N. J. Hanson and his wife, for the custody of a female child by the name of Lois Patton Spivy, of the age of about one year and five months at the time of the filing of the petition, January 30, 1915.

The mother of the child died when it was about ten days old, and the father, after placing the child with one or two other persons for care and attention, finally took it to the home of the respondents under an agreement to pay the sum of $25 per month for its keep and attention. The child at that time was about five weeks old. A few days thereafter the father also came to live with the respondents as a boarder. There he remained until about April, 1914, when, on account of his physical condition, he left, to become a patient at the Johns Hopkins Hospital in Baltimore, leaving his child in the care of respondents and providing for the monthly payments to be made during his absence.

The respondents insist that the father indicated his desire that, should his sickness prove fatal, they should take care of and provide for the child. Their evidence in this connection, however, discloses that the father made mention of some of his people who resided in Virginia and who, he thought, would like to have the child. The father died. He made no will. An administrator was duly appointed, of his estate, valued at from $12,000 to $15,000, and this child is the sole heir.

An account for board, clothing, and medicine for the child was duly rendered, and was paid by the administrator to the respondent N. J. Hanson. A copy of this account is set out in the record. J. E. Spivy, an uncle, and William Spivy, the grandfather of the child, visited Birmingham and saw the respondents with reference to the child. It is clear from the record that the question of the custody of this child was being discussed and considered by all the parties concerned. It also appears that the petitioner in this cause, residing in the city of Mobile, is a sister of the child's mother, and is its nearest relative residing in this state. It further appears that others, bearing similar degrees of relationship, as well as the child's paternal grandfather, all of whom reside without the state, are willing that the petitioner have its custody and control in preference to themselves.

On September 24, 1914, a petition was filed in the probate court of Jefferson county by the American Trust & Savings Bank, a corporation, seeking to be appointed the guardian of the minor,

Lois Patton Spivy. The petition set up that the minor had no father or other legal guardian residing in this state, and that it had property in this state estimated to be worth about $10,000. The petition was by the "American Trust & Savings Bank, a corporation existing under the laws of the state of Alabama." On September 28, 1914, the probate court, acting upon said application, issued letters of guardianship to the said "American Trust & Savings Bank in and upon the person, goods, chattels, rights and credits of Lois Patton Spivy, a minor."

On October 16, 1914, respondent N. J. Hanson wrote to J. E. Spivy, the child's uncle, residing in Clinchport, Va., informing him that the probate court had appointed said bank as guardian of the child and of her estate, and that respondent could not let him have the child if he came for her.

It very satisfactorily appears to our minds, from the evidence in this case, that the petition of the bank to be appointd guardian, and the appointment thereof, was at the instance of the respondent N. J. Hanson. The negotiations to this end seem to have been carried on by George A. Blinn, Jr., general manager of the Excelsior Laundry of Birmingham, at which concern the respondent N. J. Hanson held a responsible position, and where he had been working a great number of years. Mr. Blinn testified that he recommended to Mr. Hanson that he have the bank appointed guardian, and also recommended to the bank that it petition for the appointment; further stating that: "What I did in the matter was at the instance of Mr. Hanson. * * * What I did was for the purpose of helping Mr. Hanson keep the child. Hanson asked me to help arrange for him to keep the child. That is what I went to see the bank for."

While there may be some slight contradiction of the above conclusion that this appointment was made at the instigation of the respondent Hanson, yet we think that the evidence of this witness, considered in the light of the facts and circumstances and of the letter written by the respondent, previously referred to, is sufficient to convince the mind of the correctness of the conclusion, beyond all reasonable doubt. We do not, however, consider this a matter of vital importance, or indeed, of any material importance on this appeal.

The petitioner saw the child, when she was in Birmingham for a two weeks' stay, in July, 1914. She testified that she saw

the child every day, at the respondents', and that they never set up any claim to the child.

This proceeding was begun in the form of a petition for the writ of habeas corpus. The return upon the writ shows that the same was served on respondent N. J. Hanson, February 2, 1915, at about 9:30 a. m. On the same day the said respondent filed in the probate court his declaration of the adoption of the child. Respondent insists that he had not at that time been served with the writ; but it would seem quite clear from this record that even if he had not been served he knew that the petition had been filed or that such a proceeding would be immediately instituted. That this step was taken by him in anticipation of and by way of defense to a proceeding either already begun or imminent is quite clear.

The evidence for the respondents shows that when the bank was appointed guardian, an agreement was at once made with the president of the bank whereby the respondent N. J. Hanson was to continue to have the custody of the child, holding it, as it were, as the agent of the bank. The bank has had no assets of the minor, the same having been in the charge of the administrator. The respondents declined to surrender the custody of the child to the petitioner and, by way of defense, set up the appointment of the bank as guardian of the person as well as of the estate of said minor, and that they held custody for the bank; and further set up that N. J. Hanson, having adopted the child, was entitled to its custody.

Much evidence was offered on the hearing, touching the fitness of the respective parties to have the care and custody of this child. There was much evidence offered on the part of the petitioner, going to show that the father of the child objected to the respondents having any permanent charge of his child, because their religious faith was different from his own. The evidence offered by the petitioner shows that she is a woman about 38 years of age, in good health, living comfortably on her husband's income, in good surroundings, in the city of Mobile; that she is the child's aunt on its mother's side; that she has a child of her own, about 3 years of age and a brother living in Mississippi, about 50 miles from Mobile, who has children, and between whom and petitioner visits are interchanged. Petitioner is shown to be a woman of good standing and no attempt has been made to impeach her.

The respondent N. J. Hanson appears to be a good, industrious citizen, with earning capacity a little in excess of that of petitioner's husband. He is shown to have come to this country from Denmark when a boy, and to have married Mrs. Hanson in the state of Iowa. The respondents have one grown daughter residing in the house with them. It is without dispute that they have taken most excellent care of this child; and no doubt respondent N. J. Hanson spoke most truly when he said, "We love it as our own."

Upon the conclusion of the evidence the court stated that in his judgment there was only one question to be considered, and that was, the welfare of the child; and that, being of the opinion that the child's welfare would be best promoted by the respondents retaining its custody, he denied the petition. Upon this appeal counsel for appellees insist that while the conclusion of the court could well be rested upon the consideration of welfare of the child, yet it might also have been rested upon the legal phases of the case, viz., upon the issue of the letters of guardianship to the bank, and the adoption proceedings.

The city court of Birmingham was, upon its establishment, empowered with full equity jurisdiction; and that the judge of this court, sitting in this case, possessed all the powers of the chancellor, is quite clear. Indeed we do not understand that this proposition is seriously controverted.

(1) In *Woodruff v. Conley,* 50 Ala. 304, is the following language: "Any matter affecting a child may become a subject of chancery jurisdiction; and it is immaterial whether it is brought to the attention of the court by bill, petition, or application for the writ of habeas corpus. The relief desired generally indicates the form of the application, which will be varied by the court to suit the circumstances developed. In this case, the mode of proceeding is adequate.for the purpose designed, and is proper and right."

(2) Likewise applicable is the following from *Pearce v. Pearce,* 136 Ala. 188, 190, 33 South. 883, 884: "In proceedings of this nature, involving the custody and care of infants, the paramount consideration is the well-being and good of the infant. The rights of the petitioner and the defendant in the petition are secondary in consideration. The infant is regarded as the ward of a court of chancery, and that court will not permit his well-being to be jeopardized by any judgment in a previous contest

between the father and mother concerning his custody and care. The court may by its decrees change its custody from one parent to the other, as the interest and care of the infant may in the judgment of the court require. The character and purpose of the proceedings here are different from an action where only the rights of the parties litigating are involved."

See, also, the recent case of *Hayes v. Hayes,* 192 Ala. 280, 68 South. 351.

It is urged by counsel for appellee that as the bank had been appointed guardian of the person of the ward as well as of its estate, the bank is entitled to the custody of the ward as against strangers or relatives; that the guardian stands in loco parentis, citing *Desribes v. Wilmer,* 69 Ala. 25, 44 Am. Rep. 501; *Huie v. Nixon,* 6 Port. 83; 21 Cyc. 62, among other authorities; and that the appointment of the bank cannot be attacked in this, a collateral proceeding.

For the purposes of this case it may be conceded that this contention presents the general rule; but we do not find that the authorities cited were dealing with a question involving the power and jurisdiction of a court of chancery, concerning the welfare of a minor considered as the ward of the court, once jurisdiction attached.

The question is given some consideration by Mr. Schouler in his work on Domestic Relations, p. 490, where it is said: "But the custody of infants, as we have seen, is a subject within the free discretion of courts of equity; and where the interests of the ward require it, the care of his person will be committed to others. Chancery jurisdiction applies in this respect to testamentary and chancery guardianship. The good of the child is superior to all other considerations. Of this the court will judge in each case by the circumstances, and make orders accordingly, both as to actual custody and as to the persons who may have access to the child. * * * The right of chancery courts to regulate the personal custody of infants subject to probate guardianship has also been asserted in this country. This principle determined the decisions of the court in the New York case of *People v. Wilcox.*"

(3, 4) That a court of equity is the general guardian and protector of all infants within its jurisdiction is forcibly expressed by Chief Justice BRICKELL in *Lee v. Lee,* 55 Ala. 590, wherein is recognized the power of such court to remove a

[Murphree v. Hanson, et al.]

guardian, although he be appointed by the probate court. Judge BRICKELL said: "The court of chancery has original, inherent, jurisdiction to appoint guardians for infants within its territorial jurisdiction, and to remove them, whenever the interests of the infant may have required it. * * * Whenever a suit is instituted for the protection of the infant, either in person or estate, the infant becomes a ward of the court, and the court exercises over him and his estate a general supervision and control. In this sense, it is true here, as in England, that the court of chancery is the general guardian and protector of all infants within its jurisdiction."—55 Ala. 595, 599.

The plenary power of the chancery court over minors within its jurisdiction, involving the removal of guardians, as well as its power of control over the guardian, is noted in 2 Story, Eq. Jur. § 1339, cited in *Lee v. Lee, supra,* wherein the author states that: "Where the conduct of the guardian * * * does not require so strong a measure as a removal, the court will, upon special application, interfere, and regulate and direct the conduct of the guardian in regard to the custody and education and maintenance of the infant; and, if necessary, it will inhibit him from carrying the infant out of the country; and it will even appoint the school where he shall be educated."

(5, 6) The minor child involved in this controversy is in the possession of these respondents, and by this proceeding a court exercising full equity powers has acquired jurisdiction of the minor, who has therefore become a ward of the court. Had these respondents been appointed guardians of the minor by the probate court it could not be questioned, consistently with our decisions, that a court of equity would possess inherent plenary power over the custody of this child, who by this proceeding became a ward of the court. The argument is made, however, that the banking corporation is not a party to this proceeding, and that therefore it could not be removed as guardian over the custody of this minor, and that a corporation cannot be bound by a suit against its agent only. It is of course conceded that this argument presents the general rule, but it loses sight of the fact that cases of this character are not to be included within the general rule, but are exceptions. The welfare of the child is the question of paramount importance, the rights of the parties to the litigation being merely a matter of secondary consideration. No proceeding concerning the custody of a minor can become, under our

rule, a matter of res judicata, so as to affect a court of equity in the exercise of its paramount jurisdiction over minors brought within its control. The custody of this child was placed by the bank, or by its officers, with these respondents and, so far as the question here concerned is involved, they offer as a defense the letters of guardianship issued to the bank and to that extent seek to place themselves in the bank's stead and are asserting the rights of the bank in that regard. It would seem, therefore, that neither these respondents nor the bank is in position to raise the question that the corporation is not a party. The removal of the bank as guardian, furthermore, is not here attempted. Its letters of guardianship over the estate of this minor remain entirely undisturbed. By this proceeding a court of equity merely changes the custody of the child to those whom it deems the child's welfare demands. The respondents, standing in the place of the bank, present all the rights which the bank itself could present. They stand as agents for the bank, and, indeed, of necessity, the bank can have custody of the minor's person only through some delegated agent; and it is therefore clear that this argument is of a technical character, in no manner involving any of the substantial merits of the cause, and overlooks that equitable maxim that "a court of equity looks through form and to the substance of things."

(7) Letters of guardianship may be issued under the laws of this state, without notice being directed to the next of kin; it being purely an ex parte proceeding. We are therefore of the opinion that the trial court had full power and authority in regard to the custody of the child, aside from the question of the incapacity of the bank to be hereinafter considered.

While our statute may make no provision for the separate appointment of a guardian of the estate and a guardian of the person, of the minor, yet we are not able to see that there is any inconsistency in a rule permitting the separation of the two. Such a ruling was approved by the New York court in *Matter of Buckler*, 96 App. Div. 397, 89 N. Y. Supp. 206, the court saying: "The appointment of the Knickerbocker Trust Company secures the safe administration of the estate of the infant and securely protects his interest in that regard, while the custody of his person by his sister Elizabeth insures his personal welfare."

(8) Appellant's counsel insist that the appointment of the American Trust & Savings Bank, a corporation organized under

the law of Alabama, as guardian of the person of this minor, is ineffective and void and should be disregarded in this proceeding. All of the charter provisions, as well as those found in section 3518 of the Code of 1907, have been by us duly considered. A careful reading, however, of this section of the Code, as well as of the charter provisions and legislative authority granted to the bank, convinces us that the relationships of executor, administrator, guardian, receiver, and such like, authorized to be assumed, have reference only to matters of estate and concern only property interests; that they were clearly so intended, and were not designed to clothe the bank with authority to stand in the place of a parent.

The petition for letters of guardianship showed upon its face that the petitioner was a banking corporation organized under the laws of this state, and the letters of guardianship likewise so indicate. As has been stated by another, touching the duties of the guardian of the person of a minor ward: "He superintends his education and directs him in the choice of a pursuit; and in general, he supplies the place of a judicious parent."

Necessarily it is a relationship requiring personal care and attention, and, indeed, is a most responsible position.

In 21 Cyc. 37, is the following: "It has been held that a partnership cannot be appointed guardian. Neither is a corporation eligible to appointment unless specially authorized to accept such trusts in its charter. Statutes in some states, however, expressly authorize the appointment of particular corporations, generally known as trust companies, as guardians of minors."

Speaking to this subject, the author, in a note, makes the following observations: "The reason for this rule is that a corporation in no case can be conceived to act for the person. They keep a supervision over the estate, but except through a person whom they must necessarily appoint, they can sustain no personal relation to the minor. The corporation as a guardian of the person therefore is the most anomalous relation known to modern jurisprudence. See, also, for an interesting and full discussion of this question, 58 Cen. L. J. 1."

There are some authorities, touching more or less upon the question, found cited in the article of the Central Law Journal, to which the author of the note directs attention.

(9) It is insisted by counsel for appellees, however, that corporations may act as guardians of the person, and that there are,

indeed, many institutions organized for the care of infant children, which are recognized as proper custodians of minors. Such institutions are organized and established for that particular purpose, and their capacity to so serve is not questioned. They are established as homes for children otherwise unprovided for, and with such institutions we are not here concerned. The corporation here concerned is a banking corporation, and was not organized for any of the purposes or any of the duties here undertaken to be asserted. Indeed, such duties would be inconsistent and out of harmony with the purposes of its organization. The duties of a guardian of the person of a minor require personal supervision, and are of such a character as necessarily could not be performed by the bank except through some designated person, and thus the ward could be shifted from place to place and from person to person as the directing authorities of the bank might see fit. Civilization has long since discountenanced that doctrine of ancient Roman law wherein children were treated as chattels, and the courts of this day have no more important or sacred duty to perform than to look after the proper care and custody of minors coming within their jurisdiction. We therefore have no hesitation in holding that the bank was incapacitated, and was without authority to act as the guardian of the person of this minor, the performance of its duties as such necessarily having to be delegated to another. It is not merely a question of ultra vires, as appellees' counsel appear to argue, but more a question of incapacity and unfitness, appearing upon the very face of the proceedings. In so far, therefore, as the letters of guardianship purport to give the bank control and authority over the person of this minor, we are of the opinion that to that extent they are void and present no obstacle to the relief sought in the petition.—*Dorman v. Ogbourne*, 16 Ala. 759. With these views as to the bank's incapacity to serve as a guardian of the person of Mr. Justice SOMERVILLE does not agree. This particular portion of the opinion expresses only the views of the other concurring Justices and of the writer.

(10, 11) We have heretofore referred to the adoption proceedings, wherein the respondent N. J. Hanson filed in the probate court his statement of the adoption of this child, the same having been filed after the filing of this petition and, we think, for the evident purpose of presenting an additional defense to a suit for the custody of the child. Counsel for appellees insist

[Murphree v. Hanson, et al.]

that by this proceeding respondent N. J. Hanson, the adoptive parent, became entitled to the custody of the child—citing *Cofer v. Scroggins,* 98 Ala. 342, 13 South. 115, 39 Am. St. Rep. 54; *Tilley v. Harrison,* 91 Ala. 295, 8 South. 802. The cases cited in no manner involve questions of a nature kindred to that here under consideration. As said in *Cofer v. Scroggins, supra*: "The primary object of the statute would seem to be, to allow any person to adopt the child of another, and make it capable of inheriting his estate, if he should die intestate, or to change the name of one previously adopted."

And while the above authority states that the statute has been given a more liberal interpretation, yet such a proceeding is purely ex parte, requiring no notice to be given any person, nor any order of the court; it is merely a declaration prepared in accordance with the statute and filed in the court.—Code, § 5202. There is nothing in the statute cited which we think would sustain the contention that such a declaration of adoption would be binding and effective on a court of equity once acquiring jurisdiction of the person of the child, as to its proper custody. It is in no sense a judicial act and has about it no elements of a judicial decree.—*Prince v. Prince,* 188 Ala. 559, 66 South. 27. It would present an anomalous situation in our jurisprudence, if such an ex parte declaration could be held to be binding and conclusive on a court of equity, as to the custody of a minor child. We cannot subscribe to such a doctrine.

These two contentions, therefore, presented as impediments to the relief sought in the petition, we hold to be without merit and to present no obstacle to the relief prayed. Such also seems to have been the conclusion of the court below, as it denied the petition on the sole ground that the court deemed it best for the welfare of the child that it remain with the respondents. The character and standing of the petitioner and of the respondents, in the respective communities where they reside, appear to be good. None of the parties are shown to be people of means, but respondent N. J. Hanson appears to have an income to some extent in excess of that of the husband of the petitioner. It is shown, however, beyond dispute, that the child in question is sole heir to an estate of value estimated to be from $12,00 to $15,00, and that it should therefore, at least for a long time to come, be more or less independent of any one from a financial standpoint. The question of the comparative financial standing of the respec-

tive parties to this suit is therefore of little importance on this appeal. Nor can the question of religious belief receive any consideration at our hands. We deal with the case upon its legal principles only. This much is said in response to some of the arguments offered in the case.

(12) There is some evidence, as previously noted, tending to show that the father of the child, who was of a different religious belief from that of the respondents, expressed a desire that the child be not brought up in their faith. It has been held that the expressed wishes of a deceased parent, as to the religious education of his child, should be by the court given due consideration.—21 Cyc. 34. The result of this appeal, however, is not influenced by consideration of any such expressed wish if such there was; and that question is therefore unimportant here. The respondent's relation to, and acquaintance with, this child arose from the simple business arrangement that they should care for it at so much per month. Petitioner is one of the child's nearest relatives; she is a woman of good character, and has a child of her own, about the age of the child in question. It is recognized as a general rule that, other things being equal, the relatives of a minor will be preferred to strangers.—21 Cyc. 35, and note. The sympathy and sustaining force which blood relationship always feels and exercises was recognized in *Desribes v. Wilmer, supra,* where the writer of the opinion, Judge STONE, concluded this thought by saying: "I think it would have been better for the children, all things considered, if they had been restored to their 'kinsman according to the flesh.'"

Preference for near relationship is also shown by the provisions of section 4342 of the Code, where the probate judge, in a case where there were two or more applicants for the guardianship of a minor, is directed to prefer that person who is of the nearest relationship. See, also, in this connection, *Boylan v. Kohn,* 172 Ala. 275, 55 South. 127; *Hernandex v. Thomas,* 50 Fla. 522, 39 South. 641, 2 L. R. A. (N. S.) 203, 111 Am. St. Rep. 137, 7 Ann. Cas. 446. It is the recognized rule in this state, in cases of this character, that the welfare of the child is of paramount importance, the interests of the parties to the suit being of secondary consideration.—*Hughes v. Hayes, supra; Montgomery v. Hughes,* 4 Ala. App. 245, 58 South. 113. By this it is not meant, however, that the question of blood relationship should be ignored and the matter of the financial or material welfare alone be con-

sidered. All things being equal, relatives should be preferred to strangers. The contrary rule would permit a wealthy stranger to deprive a near relative of the care, custody, and control of the child, merely because he happens to be possessed of greater financial advantages.

(13) In the instant case, we have considered the character of the respective parties as having been established as good, with but little difference in their financial standing. We have also pointed out that the estate of this minor should be entirely sufficient for its own support. Certainly, then, to say the least of it, all things are entirely equal here; and the relative should be preferred over strangers. The care of this infant having been committed to the respondents in a purely business transaction, we are unable to see any sound reasoning why their relation to the infant should be turned to any such great advantage as to give them the preference over the blood kin in the question of custody and control. That the respondents, who have now had the child for some little time, have learned to love it as their own, is but natural; and considering the frailties of human nature, their efforts to keep the child, under the circumstances, cannot justly be the subject of adverse criticism. In their fondness for the little one they may have, as is often the case, allowed their affections to overcome their better judgment.

(14) There are some questions presented in the pleadings which we have brushed aside, as immaterial to be considered on this appeal. The issues were sufficiently presented to call into exercise the full jurisdiction of the chancellor over the custody of this minor, and mere legal niceties in pleading are not to be favored in a case of this character. There were also a few questions raised in the evidence which we likewise consider as immaterial to the result of this appeal, and these are therefore not determined.

(15) Appellees' counsel argue that as this case was tried by the court with the witnesses before him, the judgment of the court must have the effect of the verdict of a jury; and that in such cases the judgment should not be disturbed unless the preponderance of the evidence against it is so decided as to clearly convince the court that it is wrong and unjust.—*Briel v. Exchange Bank,* 180 Ala. 576. 61 South. 277; *Pinckard v. Cassels,* 195 Ala. 353, 70 South. 153: *McIntyre Co. v. Jackson,* 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66; *Woods v. Potts,* 140 Ala.

425, 37 South. 253. In this case, however, we think it quite clear, from an examination of the record and from the language of the court in stating his conclusion, that the trial court failed to give due consideration to the question of blood relationship which we have here discussed; and if it appears that the trial court took an erroneous view of the law as applied to the facts before him, the above-stated rule will of course be without application. In addition to this, when the case is stripped of its legal defense as to the questions of guardianship and adoption, there is little of dispute between the parties upon those questions which are considered most material, or of prime importance, in cases of this character. We are persuaded, upon a most careful examination of this record, that the trial court reached an erroneous conclusion, and that the petitioner should have been awarded the custody of this child.

The judgment of the court will therefore be reversed, and one will be here entered, granting the relief prayed in the petition and awarding the custody of the child to the petitioner.

Reversed and rendered.

MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN, J., dissent.

McCLELLAN, J.— (dissenting).—This is a petition for habeas corpus to effect the delivery to the petitioner of an infant, without parents, now in the custody of the respondents, who have the charge and care of the child under the authority of the American Trust & Savings Bank, an Alabama corporation, that was regularly appointed the guardian of the child's person and estate by the probate court of Jefferson county. The decree of the probate court proceeds from an indubitable jurisdiction in the premises. The custody of this child is under, and alone attributable to, and must be protected by, the decree constituting the bank the guardian of the child. If the decree is not void, so that its nullity may be disclosed even in a collateral proceeding such as this is (*Brinster v. Compton*, 68 Ala. 299), then habeas corpus cannot avail to disturb the custody, a status established by the probate court. Code, § 7032, puts that question beyond all doubt. It reads: "No court, chancellor, or judge, on the return of a writ of habeas corpus, has authority to inquire into the regularity or justice of any order, judgment, decree, or process of any court legally constituted. * * *"

Not even a chancellor can inquire, on a hearing of a petition for habeas corpus, into the regularity or justice of an order, decree, judgment or any process made, rendered, or issued by a court of competent jurisdiction. If the custody of the child is ill-advised, the remedy, provided by statute, is in the court appointing the trust company the guardian of the child. That decree, entered under a full jurisdiction to so pronounce, cannot be soundly subverted or annulled in any respect by or in a purely collateral attack upon a status established by it. This result from elementary consideration. In the absence of a living parent, the custody of a child is with and must be committed to the regularly appointed guardian.—Code, § 4339. See Code, § 4338, where the minor over 14 years of age is empowered to nominate the guardian. In New York there may be one guardian of the estate of the minor and another of the person. That is because positive law has so prescribed. Section 2821 of the New York Code of Civil Procedure, 3 Stover's Anno. Code, provides:

"The same person may be appointed guardian of an infant in both capacities; or the guardianship of the person and of the property may be committed to different persons."

This statutory regulation accounts for the ruling made in *Matter of Buckler*, 96 App. Div. 397, 89 N. Y. Supp. 206. We have no such statute; hence it is a mistake to accept as any measure of authority the decision of the New York court in the *Matter of Buckler, supra,* cited and relied on in the opinion of the majority.

The trust company which the probate court of Jefferson county constituted the guardian of this parentless infant was authorized and empowered by law to be appointed guardian of this infant.—Acts 1900-01, p. 1396 et seq., § 4, p. 1397; Code, § 3518. Surely, in view of the express charter powers conferred on the institution appointed by the probate court to be the guardian of this infant, it cannot be soundly held that the probate court was not authorized to appoint the corporation a guardian, thereby necessarily vesting in it the right to the custody of the child, unless it can be affirmed that the Legislature is powerless to authorize the creation of trust companies, or to create trust companies, that may serve as guardians of the persons and estates of infants. There is no such restraint upon the legislative power written in, or to be implied from, our organic law. It is, as I view it, a very serious matter to affirm, without constitu-

[Plunkett v. Dendy, et al.]

tional warrant therefor, that the Legislature is powerless to create corporations to do a trust business and to serve as guardians of the persons of parentless minors, resident of this state.

In my opinion the relief sought through the writ of habeas corpus was correctly denied, upon the ground indicated.