(113 So. 248)

## BROXSON v. SPEARS. (4 Div. 332.)

Supreme Court of Alabama. May 19, 1927.

Rehearing Denied June 15, 1927.

**1. Insane persons ☞34—Best interests of estate of person of unsound mind is paramount consideration in selecting guardian, and nearest relative need not be appointed (Code 1923, § 8117).**

The paramount consideration in selecting a guardian for the estate of a person of unsound mind is the best interests of the estate, and this overshadows any claims of relatives and the nearest relative who is fit and competent need not be appointed, regardless of superior qualifications of more remote relative, under Code 1923, § 8117, providing that, if there are two or more applications for the guardianship of a person of unsound mind, court must appoint person who is of nearest relationship and will best manage estate.

**2. Insane persons ☞33(2)—Presumption favored trial court's ruling appointing guardian of estate of lunatic, where court had parties and witnesses before him.**

Appellate court will presume that trial court's decree appointing a guardian for the estate of a lunatic was correct, where trial court had parties and witnesses before him.

**3. Insane persons ☞33(1)—Decree appointing lunatic's brother as guardian of her estate rather than lunatic's daughter, who was under influence of debtor to estate in which ward had interest, held sustained by evidence.**

Evidence *held* to sustain decree of trial court appointing lunatic's brother, who was 47 years of age, as guardian of her estate rather than lunatic's daughter, who was 21 years of age, and who was under the influence of a debtor to an estate in which the ward and her daughter shared equally.

**4. Insane persons ☞34—Daughter held proper guardian of lunatic's person rather than brother.**

Where there was no complete mental collapse of lunatic nor fear of violence, lunatic's daughter *held* proper guardian of person rather than lunatic's brother.

**5. Insane persons ☞34—In appointing guardian for lunatic's person, home relations should not be disturbed without good cause.**

When the court appoints a guardian for the person of a lunatic, it should not disturb the home relations without good cause to do so.

**6. Insane persons ☞34—Much may be left to wishes of lunatic in appointing guardian of her person.**

In determining who should be appointed to be guardian of the person of a lunatic, the court may leave much to the wishes of the lunatic herself.

**7. Insane persons ☞34—Lunatic's brother may be guardian of her estate and lunatic's daughter guardian of her person without joint guardianship.**

Where lunatic's brother should be guardian of her estate and lunatic's daughter should be guardian of her person, joint guardianship is not necessary, but the two guardianships may be separate.

**8. Insane persons ☞34—That estate is owned jointly by daughter and lunatic is no reason why daughter should be guardian of lunatic's estate.**

It is no reason for the appointment of lunatic's daughter as guardian of her estate that the estate, both real and personal, is owned jointly by the lunatic and her daughter.

**9. Insane persons ☞38—Vacation of appointment of guardian for lunatic operated as "removal."**

When order appointing guardian for lunatic was vacated and held for naught, such operated as a "removal" of the guardian.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remove—Removal.]

**10. Insane persons ☞45—Surety for lunatic's guardian is usually liable only for funds received by guardian prior to removal.**

In most cases, surety on bond of a lunatic's guardian is liable only for funds which came into guardian's hands prior to his removal as guardian.

**11. Insane persons ☞35—That appointment of lunatic's guardian was vacated by agreement does not affect impropriety of reappointing former guardian on security of former bond.**

The impropriety of reappointing a former guardian of a lunatic on the security of the bond formerly given by him is not affected by the fact that the former appointment was vacated by agreement in order to open the matter of the appointment for a hearing de novo.

**12. Insane persons ☞33(2)—Error in reappointing former guardian of lunatic on security of former bond may be noticed by Supreme Court of its own motion.**

Supreme Court may notice of its own motion error in reappointing the former guardian of a lunatic on the security of the bond given by him when he was appointed the first time, under the general power and duty of courts to protect trust estates.

**13. Insane persons ☞35—Granting letters of guardianship to former guardian of lunatic on security of former bond held improper.**

Portion of decree granting letters of guardianship to a former guardian of a lunatic on the security of the bond given by him on his first appointment *held* improper and stricken; it not appearing that the former bond covered the present guardianship.

Appeal from Probate Court, Geneva County; D. G. Roach, Judge.

Petition of Abe Spears for letters of guardianship of the person and estate of Callie Donnell, a lunatic, and a like petition by Eleanor Broxson. From an order or decree appointing Abe Spears as guardian of the estate of the lunatic, Eleanor Broxson appeals. Modified, and as modified affirmed.

E. C. Boswell, of Geneva, for appellant.

Appellant is the nearest relation to the ward, and is entitled to a preference over appellee. Her appointment as guardian would be to the best interest of the ward. Code 1923, § 8117; Boylan v. Kohn, 172 Ala. 275, 55 So. 127.

Carmichael & Tiller, of Geneva, for appellee.

There is no rule of absolute preference of relations; the court should have in view the best interest of the lunatic. Boylan v. Kohn, 172 Ala. 275, 55 So. 127; 22 Cyc. 1139. The interests of the guardian should not be antagonistic to the interests of the estate. 28 C. J. 1076; Lee v. Lee, 67 Ala. 406; Desribes v. Wilmer, 69 Ala. 25, 44 Am. Rep. 501. The court might intrust the person of the ward to one guardian and the estate to another. Murphree v. Hanson, 197 Ala. 254, 72 So. 437; 32 C. J. 653; 4 Port. 392.

BOULDIN, J. The appeal is from an order of the probate court selecting and appointing a guardian of the estate of a person of unsound mind.

The contest is between a daughter and a brother of the ward. On hearing the testimony orally the court selected the brother.

[1] In Boylan v. Kohn, 172 Ala. 275, 55 So. 127, this court carefully considered the statute, now section 8117 of the Code. It was said:

"The paramount consideration of the law has always been the best interests of the ward and of his estate, and this is peculiarly the case in respect to the selection of his guardian. And when the law declares a preference in favor of any class of persons, it is only because of the assumption, sanctioned by the laws of human nature and experience, that the person thus preferred will best administer the trust in favor of the ward, and not because the law recognizes any rights inhering in relationship per se. This principle is not only recognized in the statute, but is enjoined in mandatory terms. And we can entertain no doubt, in view of the declared principles of the common law, and the plain language of the statute itself, that the advantage of the estate remains the paramount purpose of the law, and overshadows in importance any claims of relatives to undertake its management."

The statute was declared not mandatory in favor of the nearest relative, if that relative be fit and competent, regardless of the superior qualifications of a more remote relative; that the court has a judicial discretion not to be disturbed except for manifest abuse. The clear statement of the law in that case leaves nothing to be said.

[2, 3] The moral qualifications of either applicant is not questioned. Evidence of business experience and capacity is presented on both sides. In point of experience the brother, 47 years of age, appears to have the advantage of the daughter, 21 years of age. Both are married and each has the care of a family. The trial court found a handicap to the daughter in the dominating influence of an uncle on her father's side, who is shown to be heavily indebted to the estate in which the ward and her daughter share equally. There appears to have been no administration on the estate.

In view of the presumption in favor of the ruling, where the court had the parties and witnesses before him, we cannot say his finding in this regard is without support in the evidence. Activity in prompting this litigation has some outcropping in the evidence.

[4] In the matter of care for the person of the ward, the evidence seems to us to favor the daughter. No complete mental collapse nor fear of violence toward herself or others appears. The delicate task of leaving the mother free to enjoy all there may be in life for her, shielding her from the danger of falling or other needless suffering from her recurring attacks, and contributing to her comfort in the many ways a daughter may, presents a feature of the case quite as vital as the conservation of her estate and its proper use on her behalf.

[5-8] Without good cause the home relations should not be disturbed, and much be left to the wishes of Mrs. Donnell, the ward, subject to conditions as they may arise. It seems to us she needs both her brother and daughter in the proper care of her estate and her person. Their co-operation to this end, under the supervision of the court, will be the true test of their loyalty to her interest. Proper allowances for care of this ward may be made. There need be no joint guardianship. That the estate, real and personal, is jointly owned by the daughter and her mother furnishes no reason why the guardianship should be granted to the daughter.

Good management and proper accounting as between the two rather favors the appointment of the brother. The order selecting Abe Spears, the brother, as guardian will not be disturbed.

[9] But we cannot approve the order of November 6, 1926, in so far as it purports to grant letters of guardianship upon the security of a bond filed and approved August 19, 1926, pursuant to appointment of that

date. The record shows that on the 23d day of August, 1926, this order was vacated and held for naught. This operated a removal of the guardian.

[10-12] Usually the surety on a guardian's bond is liable only for funds coming to his hands prior to his removal. Nothing in the record shows the National Surety Company to be a party to the later proceedings, or otherwise renewing the suretyship under the same bond so as to cover a new guardianship. The safety of a trust should not be left to the hazards of doubtful and incomplete records. That the former appointment was vacated by agreement in order to open the matter for a hearing de novo does not affect the situation. No assignment of error presents this question. The parties concern themselves as to their respective claims to the guardianship. But, the matter being within the jurisdiction of this court upon appeal, we take notice of it under the general power and duty of courts to protect trust estates.

[13] The decree or order of November 6, 1926, from which the appeal is taken is modified by striking out that portion of the decree granting letters of guardianship upon the security of a former bond, and, as so modified, that decree is affirmed. Upon the execution of a new bond conditioned as prescribed by law in an amount fixed by the judge of probate and with sureties approved by him, the order granting letters of guardianship should be entered, modified, and affirmed.

Modified and affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.