241 So.2d 109

Joe STARNES, Jr., as Guardian Ad Litem for Porter G. Blount, a Non Compos Mentis

v.

Walter BRASSELL, as Guardian of the Estate of Porter G. Blount, a Non Compos Mentis.

8 Div. 320.

Supreme Court of Alabama.

Nov. 5, 1970.

Joe Starnes, Jr., Guntersville, Rogers, Howard, Redden & Mills, Birmingham, for appellant.

John W. Starnes, Guntersville, Theodore H. Hoffman, Union Springs, for appellee.

COLEMAN, Justice.

A party appeals from an adverse decree in equity. The appellee filed his motion to dismiss the appeal on the following ground:

"2. In the above-styled cause, the transcript of record fails to disclose due service of the citation of appeal on the appellee or his attorney as required by Title 7, Section 801, Code of Alabama (1940) (Recomp.1958). (Tr. p. 127)."

The transcript, at page 129, under the heading "Certificate of Appeal," contains the following recital:

"I further certify that notice of said appeal was on the 24th day of May 1968, served on Mr. Hal Vandervoort, Attorney-In-Fact for Surety; and Hon. John Starnes, as attorney of record for said appellee."

The Certificate of Appeal is signed by the register. There is no evidence offered to contradict or impeach this certificate. Accordingly, this court will presume that the foregoing statements in it are correct when there is no evidence to the contrary, and the motion to dismiss the appeal is overruled. Millican v. Livingston, 207 Ala. 689, 93 So. 620; Couch v. Bryan, 209 Ala. 13, 95 So. 377; Pryor v. Heard, 268 Ala. 310, 106 So.2d 171.

The assignments of error bound with the transcript recite:

"1. For that the verdict of the Court is contrary to the evidence.

"2. For that the verdict of the Court is contrary to the facts.

"3. For that the verdict of the Court is contrary to the law.

"4. For that the verdict of the Court is not substantiated by the preponderance of the evidence.

"5. For that the Court erred in overruling Appellant's Motion for a New Trial.

"6. For that the Court erred in rendering a verdict in favor of the Appellee on the facts submitted to the Court.

"7. For that the Court erred in not finding that there was a conflict of interest between Appellee and Appellant.

"8. For that the Court erred in finding that Appellee was a fit and proper person to be the guardian of the Estate of Porter G. Blount."

■ In Assignments 1 to 4, inclusive, appellant does not allege that any error was committed by the trial court and does not specify any ruling as being error. The first four assignments are insufficient to present any question for review. Supreme Court Rule 1; Thomas v. Brook, 274 Ala. 462, 149 So.2d 809; Everg een Heading Co. v. Skipper, 276 Ala. 623, 165 So.2d 705; and authorities therein cited.

A decree or order denying an application for rehearing in equity, which does not modify the original decree, will not support an appeal an is not subject to review on assignments of error on appeal from the final decree. Equity Rule 62; Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797; Creel v. Baggett Transportation Co., 284 Ala. 47, 221 So.2d 683; and authorities therein cited.

■ Assignment 5 specifies as error a ruling which is not subject to review, and the assignment is without merit.

Appellant argues in support of Assignments 6, 7, and 8. We are not to be understood as approving the form of these three assignments or holding that they are not insufficient in certain respects, but Assignment 8 does assert that the court erred in finding that appellee was a fit and proper person to be appointed guardian for the estate of Porter G. Blount. We respond to this argument.

Porter G. Blount, a widow, had been declared non compos mentis by the probate court and that court had appointed one A. C. Jetton guardian of her estate. Approximately a year later, Jetton submitted his resignation as guardian and filed his accounts and vouchers for settlement of his administration of the ward's estate.

The appellee, Walter Brassell, is the son and only child of Porter G. Blount. After Jetton had filed his resignation as guardian, Walter Brassell filed his petition asking to be appointed guardian of his mother's estate. The administration of the estate was moved to the circuit court in equity. Joe Starnes, Jr., was appointed guardian ad litem for Porter G. Blount.

At the hearing on appellee's petition to be appointed guardian, the guardian ad litem resisted the petition. The court granted appellee's petition. Appellee filed his bond with surety for $80,000.00. The court approved the bond and ordered letters of guardianship to issue to appellee.

The guardian ad litem has appealed. As stated, his insistence is that the court erred in appointing appellee to be guardian because the evidence shows that appellee is unfit to be guardian of his mother's estate.

It appears that the ward is living in Houston, Texas, with her sister, Elizabeth P. Bonner. Considerable animosity is shown to exist between the sister and appellee. Appellant offered in evidence a transcript of testimony allegedly taken in a civil action in the United States District Court in a case wherein Elizabeth P. Bonner, as plaintiff, sued appellee for assault and battery. We are not to be understood as holding that the transcript of testimony is admissible in the instant case. Appellee says in brief:

"Although the transcript of testimony in Federal Court (Tr. pp. 18–81) was not admissible, counsel for the appellee allowed its submission so as to give the trial court every opportunity to consider any matter whatsoever which might be helpful in reaching a conclusion of the case. . . . ."

Since appellee does not contend that the transcript of testimony could not be considered by the trial court, we consider it here.

The testimony of the plaintiff in the federal court is to effect that one night, at about 1 a. m., appellee came into his mother's house and entered a room where the plaintiff and her niece were in bed; that appellee cursed the plaintiff, seized her by the hair, threw her onto a cot, beat her with his fists, and left bruises on her face and body. Appellee's testimony was to effect that he had seized the plaintiff by her hair and shook her, but that he did not beat her or otherwise assault her, and that he left the house shortly after his mother came into the room.

At the hearing before the circuit court, in equity, appellee testified that he has lived at "Route four, Guntersville," for the last ten years. He testified further:

"Q Are there anything pressing now that needs to be done?

"A Yes, sir. There are things and there are things I would like to discuss with the court that need to be done in the interest of one of our town people, the things that need to be discussed with the court.

"Q In regards to—

"A To the property, the property of my mother needs to be administered and taken care of.

"Q Are there any law suits pending that needs to be taken care of?

"A Yes, sir. Let me make a statement. This morning I noticed the basement door is open. I don't know whether somebody had been under the basement. I noticed the door was open when I passed the street this morning.

"Q In other words—

"A Some one needs to look at it almost daily, Mr. Starnes.

"Q Did you in fact do this for your mother before the recent string of controversy that has—

"A Since I was a child I have always tended to the physical properties and the—well, first—mow the yard, all the little things that needed to be done including paying taxes and such as that. Her house, I understand, right now needs to be taken care of. No body is seeing after that. Somebody should take care of it. I would like to state something else, I would like for one other thing to go in the public record, if I am permitted—

"MR. JOHN STARNES: No. That's all.

"CROSS EXAMINATION

"By Mr. Joe Starnes:

"Q When did you come back to Guntersville?

"A Well, Joe, you ought to know me well enough since I was eight, in 1920 I came here and my father had a home in Montgomery and my mother maintained a home here as you know and for the last fifty-eight—forty-eight years I have divided my time between Guntersville and Montgomery as long as they were living. In the last fifteen years I have sold what properties I have in Montgomery and had everything, myself and my father have lived in Guntersville and I have always had two homes and spent time in both of them.

"Q What kind of job have you had since 1958?

"A Well, since 1945 I have been with the state Planning and Industrial Devel-

opment Board since I came out of World War two."

Appellee testified that his work is in the Guntersville area of the state and he spends seven nights a week at home.

Some years ago, this court had occasion to consider the conflicting claims of three applicants for appointment as guardian of an insane person. The court quoted Section 4359 of the Code of 1907, which is now Title 21, § 23, Code 1940, and recites as follows:

"If there are two or more applications for the guardianship of a person of unsound mind, the court must prefer that person who is of nearest relationship, and will, in the judgment of the court, best manage the estate of the ward."

The instant case is not a formal contest between two persons seeking appointment as guardian, but certain things this court said appear to be helpful, to wit:

" . . . . The paramount consideration of the law has always been the best interests of the ward and of his estate, and this is peculiarly the case in respect to the selection of his guardian. And when the law declares a preference in favor of any class of persons, it is only because of the assumption, sanctioned by the laws of human nature and experience, that the person thus preferred will best administer the trust in favor of the ward, and not because the law recognizes any rights inhering in relationship per se. This principle is not only recognized in the statute, but is enjoined in mandatory terms. And we can entertain no doubt, in view of the declared principles of the common law, and the plain language of the statute itself, that the advantage of the estate remains the paramount purpose of the law, and overshadows in importance any claims of relatives to undertake its management, whether their claims be prompted by the prospect of selfish profit, or by sentiments of unselfish service.

" . . . . . . . . . .

"We further hold that from such a decree an appeal lies to this court under section 2837 of the Code, and that this court will review the action of the probate court in the selection and appointment of such guardian; but, its action in this regard resting in a sound judicial discretion, it will not be disturbed by this court unless the record shows a manifest abuse of that discretion." Boylan v. Kohn, 172 Ala. 275, 279, 280, 281, 55 So. 127, 129.

See also: Broxson v. Spears, 216 Ala. 385, 113 So. 248; and Xenos v. Vafes, 225 Ala. 89, 142 So. 75.

While the conduct of appellee towards his aunt is not condoned or approved, we are of opinion that the evidence does not show that the trial court, in appointing appellee guardian of his mother's estate, manifestly abused its discretion. Appellee's treatment of his aunt does not show that he is dishonest or that he lacks ability to care for his mother and her estate properly.

On page 1 of his brief, appellant has set out six assignments of error, the first of which asserts as error a ruling which is not referred to in the assignments which are bound with the transcript. Assignments which appear in brief but are not " . . . . bound with the transcript . . . . " will not be considered. Supreme Court Rule 1; Crim v. Gilbert, 267 Ala. 665, 104 So.2d 632, and authorities cited; State ex rel. Strange v. King, 269 Ala. 196, 112 So.2d 457; Fuller v. Porter, 274 Ala. 321, 148 So.2d 648.

Affirmed.

SIMPSON, BLOODWORTH, MADDOX and McCALL, JJ., concur.